STATE, *ex rel.* R. E. CRABTREE, v. WM. J. PORTER, Judge.

149 So. 610.
Division B.
Opinion Filed August 2, 1933.

*R. B. Moseley,* for Relator;

*William J. Porter,* Respondent, In Proper Person.

BUFORD, J.—Petitioner was informed against in the Criminal Court of Record in and for Duval County, Florida, by Information in which it was charged that "R. E. Crabtree of the County of Duval and State of Florida, on the fourteenth day of February, in the year of our Lord, one thousand, nine hundred and thirty-three in the County and State aforesaid, did then and there unlawfully offer or expose for sale certain gasoline in Duval County, Florida, which test of said gasoline showed an analysis below the standard for gasoline as fixed by the Commissioner of Agriculture of the State of Florida as required by law." He was arrested and arraigned. He filed motion to quash the Information upon the ground that it charged no offense against the laws of the State of Florida. Motion to quash was overruled and the cause docketed for trial.

Petitioner applied for Writ of Prohibition upon the ground that the Information charged no offense whatever against the laws of. the State of Florida.

Section 1 of Chapter 7905, Acts of 1919, provides as follows:

"Section 1. That for the purpose of this Act all gasoline, naphtha, kerosene, benzine, or other like product of petroleum under whatever name designated, used for illuminating, heating, cooking or power purposes, sold,.offered or exposed for sale in this State, shall be subject to inspection and analysis as hereinafter provided. All manufacturers, wholesale and jobbers, before selling or offering for sale in this State, any gasoline, kerosene or other mineral oil for power, illuminating, cooking or heating purposes, shall file with the Commissioner of Agriculture an affidavit that they desire to do business in this State, and shall furnish

the name, brand or trademark of the oil or oils, which they desire to sell, together with the name and address of the manufacturer thereof, and that such oil or oils are in conformity with the standard prescribed by the Commissioner of Agriculture."

Section 6 of the Act provides as follows:

"Sec. 6. That all such oils as hereinbefore enumerated and designated that are used or intended to be used for power, illuminating, cooking or heating purposes, when sold under a distinctive name that shall fall below the standard fixed by the Commissioner of Agriculture, are hereby declared to be illegal, and shall be subject to confiscation and sale by order of the Commissioner of Agriculture. It is hereby made the duty of all manufacturers, wholesalers and jobbers and distributors who sell, barter or exchange gasoline or other oils within this State, to post conspicuously at the place of delivery to the consumer a card or sign not smaller than 12 x 15 inches, setting forth in size type not smaller than one inch in heighth, in the English language, the degree of gravity of the product sold, offered or exposed for sale."

Section 14 of the Act provides as follows:

"Sec. 14. That the Commissioner of Agriculture shall promulgate such rules and regulations not inconsistent with the provisions hereof as in his judgment may be necessary to the proper enforcement of this Act; and to define and fix the standards and specifications for all the oils and gases referred to in Section 1 hereof; such standards and specifications to be fixed before any of such oils and gases shall be sold or otherwise dispensed in this State."

And, Section 16 of the Act provides as follows:

Sec. 16. That any person, firm or corporation, who shall knowingly violate any of the provisions of this Act or any

rule or regulation promulgated by the Commissioner of Agriculture shall upon conviction thereof be punished by a fine of not more than One Thousand Dollars ($1,000.00) or by imprisonment in the State Prison for not more than twelve months, or by both such fine and' imprisonment in the discretion of the Court."

These are the pertinent sections of the legislative Act to be considered here.

It will be noted that Section 6 of the Act provides, "that all such oils as hereinbefore enumerated and designated that are used or intended to be used for power, illuminating, cooking or heating purposes when sold under a distinctive name that shall fall below the standard fixed by the Commissioner of Agriculture are hereby declared to be illegal and shall be subject to confiscation and sale by order of the Commissioner of Agriculture."

The Act in Section 14 authorizes the Commissioner of Agriculture to define and fix the standards and specifications for all the oils and gases referred to in Section 1 thereof. Such standards and specifications to be fixed before any such oils and gases shall be sold or otherwise dispensed in this State.

The Information charges that the Petitioner did offer or expose for sale certain gasoline in Duval County, Florida, which test of the said gasoline showed an analysis below the standard for gasoline as fixed by the Commissioner of Agriculture of the State of Florida, as required by law.

The amended Petition for the Writ of Prohibition alleges that at the time of the alleged exposing of and offering for sale of the said gasoline that no ruling or order had been promulgated by the Commissioner of Agriculture of the State of Florida fixing the standard test for gasoline in this State. It is alleged that the only order or rule which

had been promulgated in that regard was made and promulgated by one J. Hinton Pledger, Supervisor of Inspection. The legislative Act did not authorize any rules or orders to be made and promulgated by a Supervisor of Inspection. This duty of making and promulgating orders and rules fixing the standards of tests to apply to gasoline and other oils was only authorized to be performed by the Commissioner of Agriculture and he was not authorized to delegate that authority to some one else.

Rule *nisi* was issued herein on the 21st day of June, 1933. On June 23rd a stipulation was filed in this Court signed by R. B. Moseley, Attorney for Petitioner, and by Wm. J. Porter, Respondent in Proper Person, wherein it was stipulated and agreed between those parties that the time for filing a defense to the said petition in said cause be extended to and including the 18th day of July, 1933. The rule to show cause was returnable to the 28th day of June, 1933. The Respondent has filed no return.

Therefore, and for the reasons above stated, the permanent Writ of Prohibition is now awarded.

Let the Writ issue.

DAVIS, C. J., and WHITFIELD and TERRELL, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—It seems to me that writ of prohibition was not the proper remedy, and that the rule *nisi* should be quashed *sua sponte*. The lower court had jurisdiction to rule on all of the questions raised, and if it ruled erroneously, the Relator had an adequate remedy by writ of error. See Eberhardt v. Barker, 140 So. 633; Curtis v. Albritton, 101 Fla. 853, 132 So. 677; Crill v. State Road Dept., 96 Fla. 119, 117 So. 795.