STATE, *ex rel.* HENRY B. SBORDY, v. WM. M. ROWLETT, of Tampa, Florida, THOS. W. HUTSON, of Miami, Florida, S. E. DRISKELL, of Jacksonville, Florida, JAMES E. CRUMP, of Winter Haven, Florida, H. A. DAY, of Orlando, Florida, J. M. MANN, of Lake Butler, Florida, EUGENE G. PEEK, of Ocala, Florida, C. E. TUMLIN, of Miami, Florida, S. G. HOLLINGSWORTH, of Bradenton, Florida, and J. D. RABORN, of Trenton, Florida, as and constituting the State Board of Medical Examiners.

170 So. 311.

Opinion Filed January 15, 1936.

E. R. *Jones,* of DeLand, for Relator; .

John W. *Brunty,* of Miami, *Erle B. Askew,* and *Osmond R. Bie,* of St. Petersburg, for Respondent.

GRAY, Circuit Judge.—Written charges, under oath, were filed with the Respondent Board against Relator, seeking the revocation of the license of Relator to practice medicine in the State of Florida, which charges appear to be as follows:

"1. That Enrico V. Sbordi, also known as Enrico V. Sbordy, also known as Henry V. Sbordy, of the County of Pinellas and State of Florida, in the State aforesaid, was guilty of fraud in the practice of medicine or fraud or deceit in his admission to the practice of medicine, in that the said Enrico V. Sbordi above referred to appears to hold Certificate No. 8 of the Board of Eclectic Medical Examiners, dated April 6, 1915, which said certificate is fraudulent and improper, which fact is and has been well known to the said Enrico Sbordy, and which said fraudulent and improper certificate has been relied upon by the said Enrico V. Sbordi as authority to practice medicine in the State of Florida.

"2. That Enrico V. Sbordi, also known as Enrico V. Sbordy, also known as Henry V. Sbordy, of the County of Pinellas and State of Florida, in the State aforesaid, was guilty of fraud in the practice of medicine, or fraud or deceit in his admission to the practice of medicine, in that the said Enrico V. Sbordi, above referred to has never been and is not now a graduate of a legally incorporated medical college maintaining a standard satisfactory to the State Board of Medical Examiners of Florida, and the said Enrico V. Sbordi has represented on numerous occasions while engaged in the practice of medicine in the aforesaid State that he was a graduate, and the said Enrico V. Sbordi does now represent while engaging in the practice of medicine in the aforesaid State that he is such a graduate."

Said charges were filed with the Secretary and Treasurer of said Board and the Board issued its summons, a copy of which was duly served upon Relator more than ten days before the day fixed for a hearing of said charges, as required by Chapter 8415, Laws of Florida, 1921, as amended by Chapter 12285, Laws of Florida, 1927 (Sections 3404, *et seq.,* Compiled General Laws of Florida, 1927). Prior to the date upon which such charges were to be heard, the Relator applied to and obtained from this Court a rule *nisi* in prohibition, commanding said Board to show cause to this Court why it should not be prohibited from further proceeding with said cause. The respondents, individually and as constituting said Board, have demurred to the Relator's suggestion for writ of prohibition and have moved to dismiss the said rule and have filed their return thereto, admitting that the written charges filed with the Board are as hereinabove set forth. The Relator has filed herein his motion to strike the said demurrer and motion to dismiss, and has also filed herein a motion for further return which

the Court has considered as a motion to quash the return of the Respondents.

The first question raised is whether or not the remedy by prohibition is proper. See Section 3404, *et seq.,* Compiled General Laws of 1927, Chapter 8415, as amended by Chapter 12285, Laws of Florida; and in State, *ex rel.* Williams, v. Whitman, *et al.,* State Board of Dental Examiners; 116 Fla. 196, 156 So. 705, this Court, speaking through Mr. Chief Justice DAVIS, said: "Insofar as the legal weight and effect to be accorded administrative decisions of a quasi-legislative or quasi-executive character is concerned, the decisions are clear that the courts will not review them for mere errors of procedure or erroneous conclusions of fact, where the administrative agency in arriving at its decision violated no rule of law and the record as an entirety does not show an abuse of the delegated authority or arbitrary or unreasonable action.

"But regardless of the apparently conclusive force and effect that the courts have heretofore accorded to the findings and decisions of administrative agencies acting in a quasi-legislative or quasi-executive capacity, singly or in combination with each other, it is certain that the function and prerogative of deciding finally the law and the facts of an actual controversy bearing upon a vested legal right sought to be divested or impaired in a proceeding initiated under statute before an administrative tribunal is, in its last analysis, a pure judicial power, the exercise of which is subject to review in courts of competent jurisdiction having power to issue the writs and processes whereon legal review of official acts of other tribunals or bodies can be had.

"To the extent, therefore, that an administrative statutory tribunal or agency is vested with statutory power to

make decisions having a judicial character or attribute, as distinguished from mere exercise of delegated legislative or executive functions under the law, resort may be had to the courts of the land for the purpose of review, whether any special method of appeal be provided or not, and in such cases the courts of general jurisdiction to whom complaint is addressed against an alleged improvident, erroneous, or unjustified administrative decision shown to divest or impair some vested legal right, unless abrogated or modified, will grant an aggrieved party relief against quasi-judicial decisions of such administrative agencies, *by means of those available common-law processes adapted and designed to be used by the courts to restrain excessive or unauthorized exercises of powers on the part of subordinate jurisdictions or quasi-judicial tribunals."* And in State, *ex rel.* Swearingen, v. Railroad Commissioners of Florida, 79 Fla. 526, 84 So. 444, this Court said that the writ of prohibition "lies against any person or persons assuming to exercise judicial or quasi-judicial powers, although not strictly or technically a court." It must also be borne in mind that in Curtis v. Albritton, 101 Fla. 853, 132 So. 677, we said that the writ of prohibition is the counterpart of mandamus in the manner in which it operates, being negative, while mandamus is positive in its commands, and that in the following cases, writs of mandamus against the Respondent Board have been sustained: State, *ex rel.* Tullidge, v. Hollingsworth, 103 Fla. 801, 138 So. 372; Idem, 108 Fla. 607, 146 So. 660; State, *ex rel.* Page, v. Hollingsworth, 115 Fla. 851, 156 So. 286; Idem, 117 Fla. 288, 157 So. 887. So that we hold that in cases where the Respondent Board is acting without jurisdiction or is exceeding its jurisdiction in not proceeding in accordance with the essential requirements of law, those common law processes adapted and designed to restrain

such lack of jurisdiction or excessive exercise of power, including the remedy by prohibition, are proper. State, *ex rel.* Crabtree, v. Porter, 111 Fla. 621, 149 So. 610.

The only other question raised which is necessary for consideration in the disposition of this matter is whether or not the relator has been charged with having committed any act which constitutes a ground for the revocation of his license to practice medicine. In Williams v. Whitman, *supra,* we held that while charges before Boards, such as the Respondent Board, need not be stated with the technical nicety or formal exactness required of pleadings in the courts, yet the accused must be informed with reasonable certainty of the nature and cause of the accusation against him and must be given reasonable opportunity to defend against the attempted proof of such charges, and that any such proceedings must be conducted in a fair and impartial manner, free from any just suspicion of prejudice, unfairness or fraud or oppression. In State, *ex rel.* Jordan, v Pattishall, *et al.,* State Board of Dental Examiners, 99 Fla. 296, 126 So. 147, we held that the accusation failed to charge the dentist, whose license was sought to be revoked, with having committed any act which, under the provisions of the statutes, constituted grounds for the revocation of his license to practice, saying: "The rule is that where statutes of this kind are invoked, the provisions of the statutes must be strictly followed, because the statute, as hereinbefore stated, is penal in its nature." As we held in that case, proceedings in matters of this kind are summary in their nature, but not arbitrary or despotic, and the charges preferred must be specific.

It appears that the Relator herein has been granted and holds a license, being Certificate No. 8, granted him by the Board of Eclectic Medical Examiners in 1915, and para-

graph numbered 1 of the charges hereinabove quoted, obviously fails to charge the Relator in such fashion as to inform him, with reasonable certainty, of the nature and cause of the accusation against him. In what manner Relator has been guilty of fraud or deceit in his admission and why it is that the certificate granted him is fraudulent and improper, does not appear from such charges so attempted to be made in said paragraph numbered 1, and in the absence of specific charges, such paragraph fails to charge the Relator with being guilty of any acts which, under the provisions of the applicable statutes, constitute grounds for the revocation of his license.

Paragraph numbered 2 of the charges against the Relator, above quoted, also fails to state with reasonable certainty wherein the Relator was guilty of any fraud in his admission, except that he is charged with not being a graduate of a legally incorporated medical college, maintaining a standard satisfactory to the State Board of Medical Examiners of the State of Florida. The statute under which the Relator obtained his license from the Board of Eclectic Medical Examiners only required not less than a two-year course from some college of Eclectic School of Medicine. Chapter 4698, Laws of Florida, 1899. Under the terms of the statute governing the admission of Relator at the time of his admission to eclectic medical practice, there was no requirement of graduation of any applicant by the Board of Eclectic Medical Examiners, other than a certificate of graduation showing that such applicant had taken not less than a two-years course from some college of the eclectic school of medicine. The matter of such requirement for admission to medical practice was a matter of legislative determination by which the courts are bound. If the Relator has been guilty of such acts as authorized the revo-

cation of his right to practice, arising subsequent to the issuance of his license, or if the Relator was guilty of such fraud in obtaining such license as vitiated the validity thereof *ab initio,* he should be charged therewith clearly and with such reasonable certainty as to be given reasonable opportunity to defend against the attempted proof of such charges. Accordingly, the accusation contained in paragraph numbered 2 of said charges fails to legally charge the Relator with having committed any acts which, under the provisions of Section 3415, Revised General Statutes, 1927, constitute grounds for the revocation of his license.

The importance to the public of the proper regulation of the practice of medicine in this State, and providing for proper safeguards to prevent the licensing of or such practice by unqualified physicians cannot be overemphasized. Such regulation is a most proper sphere of legislative activity and not a matter for judicial determination.

The language of the Court in State, *ex rel.* Fowler, v. Finley, 30 Fla. 302, 11 Southern 500, 503, speaking through Mr. Justice MABRY, is equally applicable here. The consequences to a physician disbarring him from the practice of his profession, are serious. His profession may be a source of great value to him, equal to any rights which he may have, and the loss of it may inflict destitution and poverty upon himself and family. In such proceedings, the physician is clearly entitled to have the causes urged as the ground for the revocation of his license specifically and particularly stated, in order that he may meet them, and a substantial defect in the proceedings in this respect, is a ground for interposition by the Court.

Chapter 8415, Laws of 1921, as amended by Chapter 12285, Laws of 1927, establishes a State Board of Medical Examiners and specifically provides the grounds upon which

the license or registration of a practitioner may be revoked, suspended or annulled, or such practitioner reprimanded, and the proceedings to be had thereunder are set out in sufficient detail to enable such Board to bar from the practice any practitioner found guilty in such proceedings had in accordance with the essential requirements of law. When fraud is depended upon for the revocation of any such license or registration, it should be a simple matter to charge specifically the nature of and facts constituting such fraud.

The demurrer of the respondent and their petition to dismiss the rule *nisi* in prohibition herein are, accordingly, overruled and denied, the Relator's motion to strike such demurrer and petition is denied, and, considering the motion of the Relator for a further return as a motion to quash the return, said motion is granted. For the reasons above stated, the permanent writ of prohibition is now awarded.

Let the writ issue.

WHITFIELD, C. J., and TERRELL, BUFORD and DAVIS, J. J., concur.

BROWN, J., dissents in part.

DAVIS, J. (concurring with GRAY, Circuit Judge).—In justification of the use of the writ of prohibition in controversies of this kind I think the following supporting observations may be made: (1) The writ of prohibition in Florida runs to redress an attempted exercise of either (a) judicial or (b) *quasi*-judicial acts, when it is made to appear that the act threatened is beyond the appropriate jurisdiction of either a (x) court or (y) a statutory board assuming to exercise same (State v. Railroad Com'rs of Florida, 79 Fla. 526, 84 Sou. Rep. 444); (2) any special and extraordinary *statutory* proceeding, whether it be provided

to be had before a court, *qua* a judicial institution, or before a mere statutory board exercising the same prerogative, is *quasi*-judicial in character whenever it involves the requirement of a notice and hearing, and contemplates the determination of guilt or innocence of an individual summoned to answer charges made before the court or board, as the case may be (West Flagler Amusement Co. v. State Racing Commission, 122 Fla. 222, 165 Sou. Rep. 64) ; (3) Conclusion : the writ of prohibition properly lies to the State Board of Medical Examiners to keep it within the scope of its proper *quasi*-judicial powers to summon before it persons charged with offenses against the law, the hearing and determination of which adverse to the persons so summoned will *ex proprio vigore* deprive him of a legal right or status ; (4) although other remedies are available for simliar redress, the writ of prohibition should issue when the other remedies are not speedy and adequate to provide redress from the usurpation of *quasi*-judicial power.   State, *ex rel.* Meredith, v. Board of Trustees, 102 Fla. 219, 135 Sou. Rep. 781 ; Joughin v. Parks, 107 Fla. 833, 143 Sou. Rep. 145, 306, 147 Sou. Rep. 273.

BROWN, J. (dissenting in part).—I concur in the very persuasive majority opinion on all questions of substantive law.   But I must dissent in part to that portion of the opinion dealing with the adjective law of the case.

This is a case of original jurisdiction.   The Supreme Court is primarily an appellate court, but our Constitution vests this Court with original jurisdiction in cases properly based upon certain common-law writs, mandamus, certiorari, prohibition, quo warranto and habeas corpus, and also all writs necessary to the complete exercise of its jurisdiction; and we have long held that the jurisdiction thus vested in this Court, as to such named common-law writs,

was the jurisdiction attaching to those writs at common law, and that the Legislature cannot take away any part of the common-law power thus vested in this Court by the Constitution.

Now it appears that at common law, as it existed on and prior to July 4, 1776 (See Sec. 87, C. G. L.), the writ of *mandamus,* unlike the writ of prohibition, might be directed, not only to some inferior court, but also to an officer, or official body, whether judicial, administrative or ministerial, or to a corporation, requiring the performance of some legal duty, while the writ of *prohibition* was only used to prevent the exercise by an inferior *judicial tribunal* of jurisdiction not within its cognizance, or from exceeding its jurisdiction in matters of which it had cognizance, and could not be resorted to when there was some other adequate remedy. See 3 Blackstone Com. 112; 50 C. J. 654. In many of the States, statutes and judicial decisions have extended the scope of the writ (50 C. J. 675), but that has not been attempted in this State, at least insofar as this Court's powers are concerned.

It is true that it has been said that prohibition is, in a sense, the "counter-part of mandamus" in that it prevents, while mandamus compels, action; but this word, "counterpart," merely illustrates the *operation* of the writ of prohibition when used in a proper case, and is not intended to enlarge or add to the class of cases in which resort to the remedy may be had. 50 C. J. 656.

Can this Court properly hold that the common-law writ of prohibition, when issued by this Court, may be extended so as to control the action of executive or administrative boards (50 C. J. 676; 48 C. J. 1097), especially where, as here, the statute provides a remedy for the prompt review by the Circuit Court of such action? Undoubtedly great

enlargement of the writ has been allowed in some States, and denied in others. But here we are dealing with the common-law scope of the writ, which, when issued from this Court, not even the Legislature can narrow or widen.

The question is, shall this Court, following the statute of 1829, now Section 87 of the Comp. Gen. Laws, adopting the common law of England down to July 4, 1776, measure the scope of the writ by the common law as it existed on July 4, 1776, or as it existed when the Constitution of 1885, was adopted? If the latter date should constitute the bases of measurement, and if the common law that existed when our present Constitution was adopted should be determined by the prevailing trend of judicial decisions in the various States of this Union at that time, then perhaps the writ might lie against executive or administrative boards when exercising quasi-judicial powers, not to correct mere errors of procedure, but to prevent such boards from acting without, or in excess of, their lawful powers. But what constitutes *quasi*-judicial power has been, and still is, the subject of various and conflicting opinions by the Court. 50 C. J. 675; 16 Encyc. Pldg. & Prac., 1102-1107; 22 R. C. L. 17-18.

I do not recall that this exact question has hitherto been presented to this Court, but the following cases have a bearing upon the questions above referred to: State, *ex rel.* Chapman, v. State Board of Medical Examiners (Minn.), 26 N. W. 123; People v. Apfelbaum (Ill.), 95 N. E. 995; Board of Medical Examiners v. Shotridge (N. D.), 207 N. W. 442; Jamieson v. State Board of Medical Examiners (Okla.), 130 Pac. 923; State, *ex rel.* Swearingen, v. R. R. Commissioners, 79 Fla. 526, 84 Sou. 445; Sherlock v. City of Jacksonville, 17 Fla. 93; State v. Goodier (Mo.), 93 S. W. 928; Curtis v. Albritton, 101 Fla. 853, 132 So.

677; Tullidge v. Driskell, 117 Fla. 717, 158 So. 277; Palmer v. Johnson, 97 Fla. 479, 121 So. 466.

The Legislature can, under Section 1 of Article V of the Constitution, confer judicial power upon "courts and commissions," but is the State Board of Medical Examiners a commission? And in view of the separation of powers provided for in Art. II of our Constitution, can the Legislature confer judicial power, strictly speaking, upon merely administrative or executive boards created in the exercise of the police power of the State for the purpose of enforcing some policy adopted by the Legislature for the regulation of certain professions or business enterprises? The statutory authority to exercise a quasi-judicial power by such boards does not transform them into genuine judicial tribunals; though, according to the apparent weight of authority, it may bring them within the reach of the writ of prohibition.

Assuming that a proceeding before the State Board of Medical Examiners, to determine the question of whether a physician's license should be revoked, is one which involves the exercise of quasi-judicial power by an administrative board, as I think it does, yet the Board, having primary authority over that particular subject matter, and the physician having been duly notified and given an opportunity to be heard, as here, writ of prohibition would not lie to prevent the exercise of that jurisdiction merely because of procedural errors in the proceedings which do not go to the jurisdiction of that body to rule on the general question involved, however erroneous its ruling might be. It is well settled that the jurisdiction to decide necessarily carries with it the power to decide erroneously. And, as pointed out by this Court in the Whitman case, the sufficiency of the written charges before such a board, on

which trial is had, are not to be measured by the technical niceties which obtain in law courts. Thus we have held that cases may be tried in municipal courts upon mere brief docket entries of the charges made, without denying due process of law. Wright v. Worth, 83 Fla. 204, 91 So. 87; State v. Drumright, 116 Fla. 496, 156 So. 721. But due process of law requires that the charge made shall be sufficiently specific to give the person charged reasonable notice of just what he is charged with, so that he may be able to intelligently defend against it. However, where the charges as framed are merely defective or demurrable, prohibition will not lie, even against a judicial tribunal which was vested with jurisdiction of the subject matter and the parties, much less against an administrative board. Errors can be corrected, in cases of this particular kind, by certiorari, or trial *de novo* in the Circuit Court, as provided by the statute. Even in habeas corpus, a petitioner will not be released unless the warrant or indictment under which he is held wholly fails to charge any criminal offense. So here, inasmuch as the writ of prohibition goes only to matters of jurisdiction, and as the charges as framed (or at least one of them) do not wholly fail to state a ground for revocation of license, I am not convinced that the writ of prohibition should issue. Adequate remedies for judicial review of the Board's action are provided by statute, and if the Board does have jurisdiction to proceed, we should not grant the writ merely because an erroneous decision by such Board is anticipated by the relator. If the possibility of an erroneous decision gave ground for the issuance of the writ, it would lie in all cases and against any sort of board. None are infallible. Perhaps if the relator had interposed the same objections before the State Board as he has here,

they might have sustained them, and resort to court action would not have been necessary.

The following excerpts quoted from the text on pages 676 to 681, of 50 C. J., give what I conceive to be a fair statement of applicable legal principles in line with our own prior decisions:

"Prohibition does not lie to correct or restrict errors or irregularities of a tribunal which is acting within its jurisdiction, although proceeding improperly in the exercise of that jurisdiction. The remedy cannot be used to supersede the ordinary functions of an appeal or writ of error, except as it may be permitted by statute. Where the inferior court or tribunal has jurisdiction of the person and subject matter, prohibition does not lie to prevent an erroneous decision, or to prevent the enforcement of an erroneous judgment. Where the existence of jurisdiction depends on controverted facts which the inferior court or tribunal is competent to determine, prohibition does not lie, even though the lower tribunal may in such case err in its determination of the question."

"Under the general rule that prohibition will not lie for the correction of errors or irregularities committed by an inferior tribunal acting within its jurisdiction, the writ has frequently been refused when sought for such purpose in criminal or quasi-criminal proceedings, as for example on the ground that the information, indictment, or complaint is insufficient to charge an offense, that defendant has been before in jeopardy, that accused was refused a preliminary examination, that accused was bound over for trial in another court, that rulings on motion to set aside an indictment were erroneous, that motion to dismiss was improperly overruled."

"A writ of prohibition will not ordinarily issue in anticipation of the action of an inferior tribunal where it has jurisdiction over the subject matter, and it will not be assumed that the tribunal will exceed its jurisdiction or rule erroneously with respect thereto. So before prohibition will lie upon the ground of lack of jurisdiction the court below must have so ruled as to make manifest a claim of jurisdiction."

For these reasons, I think that the writ of prohibition was not available as a remedy in this case.