STATE EX REL. R. D. HAWKINS, v. T. F. McCALL, JR., as Chairman of the City Commission of the City of Jacksonville, Florida; T. C. IMESON, ET AL., as City Commissioners of City of Jacksonville, constituting the CITY COMMISSION OF THE CITY OF JACKSONVILLE; ABEL J. ROBERTS, as chief of police of the City of Jacksonville, and CITY OF JACKSONVILLE, a municipal corporation.

29 So. (2nd) 739
March 25, 1947
Rehearing denied April 23, 1947

January Term, 1947
Special Division A

Austin Miller and Harry B. Fozzard, for appellant.

William M. Madison and O. O. McCollum, Jr., for appellees.

BUFORD, J.:

On October 12th, 1945, relator in the court below, appellant here, was serving as a police officer in the City of Jacksonville, in which capacity he had served for some 14 or 15 years, and as such police officer was qualified under the Civil Service of the City and was a member of "The Police Pension Fund", a statutory pension fund. He had never been reprimanded or charged with having violated any of the police regulations. He had a good arrest record and a good civil service efficiency rating. At that time he was serving on a beat which included patroling a part of King's Road where there was located a place of business operated by Walter Linder and wife, Eulah May Linder, at No. 1088.

On October 12th, 1945, the place was being operated by Eulah May Linder and Walter Linder was then in jail,

charged with some offense in connection with the place. The record shows that both parties had been arrested many times charged with violation of the law.

On the afternoon of October 12, 1945, two police officers went to the Linder place, had a talk with Eulah May, gave her $10.00 with instructions that she give it to any police officer who might come in. Then they concealed themselves upstairs and waited for developments. In a short time relator and his fellow officer then working with him drove up in an automobile and stopped in front of this place. Relator got out and went into the place. The woman, Eulah May, approached him and they had some conversation and she gave him some money. One of the police officers testified that he could see the money and identify the denomination of the bills. The other police officer said he could see that she passed some money to relator but he could not identify the denomination of the bills. Neither officer heard any conversation between the parties. They saw the money pass and saw the relator go back, get into the car and drive away.

A little more than four months later, on February 20th, 1946, the relator was suspended on written charges, as follows:

"1. Conduct unbecoming a Police Officer.

"2. He is incompetent in that I can place no dependence on him in carrying out my orders and in enforcing the law.

"3. He has failed to obey orders.

"4. His conduct is interfering with the efficient operation of the Police Department.

"5. On or about October 12, 1945, he accepted a sum of money for the failure to enforce the law.

"6. On or about October 12, 1945, he accepted compensation, other than that provided by law, for the non-performance of his duty."

On March 8th, 1946, the charges against the relator were brought on for trial before the City Commission. At that time the attorney for relator filed a motion asking the Commission to require the filing and delivery to relator or his attorney of a copy of the following particulars as to the charges preferred against him in order to enable him to in-

telligently plead to, or to prepare a proper defense to the charges filed against him, as follows:

"1. State in what manner and where and when he engaged in conduct unbecoming a Police Officer.

"2. State, in reasonable detail, the times and places he was proved incompetent in carrying out the orders of the Chief of Police and in enforcing the law.

"3. State when, where and what orders he failed to obey.

"4. State, in reasonable detail, in what manner his conduct is interfering with the efficient operation of the Police Department.

"5. State when and where he accepted a sum of money for failure to enforce the law.

"6. State what law he agreed not to enforce and with whom he agreed.

"7. State when, where and from whom he accepted compensation for the non-performance of duty.

"8. State when, where and what duty he agreed not to perform and with whom he made the agreement."

This motion was denied.

On March 6th, 1946, the City Attorney had furnished to relator's attorney a statement as follows:

"The offense alleged against Officer Hawkins occurred in Jacksonville, Duval County, Florida, on October 12, 1945, at 2:57 P.M. and that the amount of money alleged to have been received by the officer was $10.00."

After the hearing of evidence introduced by the Chief of Police an Order was entered by the Commission as follows:

"The City Commission, after hearing on charges against R. D. Hawkins, finds that said charges have been sustained and does hereby remove said R. D. Hawkins as a member of the Jacksonville Police Department."

Thereafter, on the 23rd day of September 1946, relator filed petition for writ of mandamus to coerce the City Commission to re-instate him in his office as a police officer, in which petition, among other things, he challenged the sufficiency of the alleged jurisdictional grounds contained in the charges against him, challenged the sufficiency of the allegations of jurisdictional facts upon which the grounds were

based, and challenged the sufficienccy of the evidence to sustain any of such charges.

An alternative writ of mandamus was issued and, on final hearing on motion to quash alternative writ, the court entered its order and judgment quashing the alternative writ and dismissed the cause at the cost of relator.

That mandamus is a proper remedy in such cases is well settled in this jurisdiction. See Hammond v. Curry, 115 Fla. 245, 14 Sou. (2) 390; Nelson v. Lindsey, 151 Fla. 596, 10 Sou. (2) 131; Nichols v. State, 138 Fla. 648, 190 Sou. 11, and cases there cited.

In this jurisdiction municipal officers are subject to removal only in the manner and by the authority determined by the legislature. Nelson v. Lindsey, supra; Bryan v. Landis, 106. Fla. 19, 142 Sou. 650; Rosenfelder v. Hutto, 156 Fla. 682, 24 Sou. (2) 108. It is well settled in this jurisdiction that the charge upon which a police officer, or other officer, is to be tried must allege jurisdictional grounds for removal and must also allege jurisdictional facts to support the jurisdictional grounds alleged.

In the case of State ex rel Hardie v. Coleman, 115 Fla. 119, 155 Sou. 129, we said:

"Section 15 of Article IV of the Constitution does not, neither do the statutes, indicate what form an Executive order of suspension thereunder should take, but we are of the view that if the order names one or more grounds embraced in the Constitution and clothes or supports it with alleged facts sufficient to constitute the grounds or cause of suspension, it is sufficient. A mere arbitrary or blank order of suspension without supporting allegations of fact, even though it named one or more of the constitutional grounds of suspension, would not meet the requirements of the Constitution. When we said in State v. Joughin, supra, that the courts were authorized to inquire into the jurisdictional facts on which the Governor's order of suspension was predicated, we meant to imply that the sufficiency of an executive order of suspension was ultimately a judical question, because it affected the rights of individuals."

And, in State ex rel v. Sbordy v. Rowlett, 125 Fla. 562, 170 Sou. 311, we said:

"If the relator has been guilty of such acts as authorized the revocation of his right to practice, arising subsequent to the issuance of his license, or if the relator was guilty of such fraud in obtaining such license as vitiated the validity thereof ab initio, he should be charged therewith clearly and with such reasonable certainty as to be given reasonable opportunity to defend against the attempted proof of such charges. Accordingly, the accusation contained in paragraph numbered 2 of said charges fails to legally charge the relator with having committed any acts which, under the provisions of Section 3415, Revised General Statutes, 1927, constitute grounds for the revocation of his license."

To like effect is State ex rel Carter v. Platt, 131 Fla. 240, 179 Sou. 408; State ex rel Hathaway v. Williams, 149 Fla. 48, 5 Sou. (2) 269; Rosenfelder v. Hutto, supra.

An examination of the alleged grounds numbered 5 and 6 and the purported statement of jurisdictional facts, both of which have been hereinbefore quoted, show that there is no material difference between the allegation of the grounds and the allegation of the facts to support the alleged grounds, the only difference being that the allegation of facts alleges that the offense was committed in Jacksonville, that it occurred at 2:57 P. M. and that the amount of money was $10.00, which did not appear in the alleged grounds.

These allegations of fact were entirely insufficient to advise the police officer of what act he was required to defend against or to explain.

There appears to have been no logical or just reason why, when relator definitely requested to be advised of what act he was charged with committing and what acts were supposed to constitute his misconduct, the complaining officer could not have immediately furnished full information in this regard and thereby advised the accused officer what unlawful acts he would be required to defend against or to explain.

We think that the necessity of presenting jurisdictional grounds for removal and stating jurisdictional facts which are relied upon to constitute the grounds for removal are

equally important and binding and that before a police officer can be removed from office he must be furnished with a written statement of the jurisdictional grounds upon which he is sought to be removed and, before trial, must be furnished with a statement of the jurisdictional facts upon which the jurisdictional grounds are based, which, taken together constitute the charges on which he is to be tried. This does not mean that all the evidence to support and prove the allegations of fact must be alleged but the allegation of fact must be sufficiently specific and clear to apprise the accused officer to the extent that he may have a fair opportunity to meet and disprove or to explain the act complained of.

In this case the burden was not met. The grounds for removal were definitely alleged but the allegation of facts to support the grounds for removal were not sufficient to advise the relator what he had to meet; but, had sufficient facts been alleged, the evidence entirely fails to substantiate the existence of sufficient jurisdictional facts. There is no evidence in the record showing that the relator received or accepted any sum of money from anyone *for failure to enforce* the law. There is no evidence in the record to show that he "accepted compensation, other than that provided by law, *for the non-performance of his duty*". There is no evidence in the record that he ever, at any time, knowingly failed to enforce the law; nor is there any evidence in the record to show that he ever at any time failed in the performance of his duty. In fact, the record does show that he always had a good record as an enforcement officer and for the performance of his duty.

There is no evidence in the record to support either of the other four alleged grounds for removal.

The mere fact that the police officer was handed some money by a woman who had been often arrested for violation of the law and that he put the money in his pocket is not sufficient to convict the officer for taking a bribe. The police officer is assumed to be innocent until he is proved guilty and his guilt cannot be based on guess work and suspicion. Hammond v. Curry, 153 Fla. 245, 14 Sou. (2) 390 and State ex rel Tullidge v. Hollingsworth et al., 108 Fla. 607, 146 Sou. 660.

For all this evidence shows, the woman may have represented to the relator that she was giving the relator the money for an entirely legitimate purpose and, without evidence to the contrary, neither the City Commission nor the court is justified in reaching a conclusion that the woman delivered it to him for an unlawful purpose. See Becker v. Merrill, 155 Fla. 379, 20 Sou. (2) 912 and cases there cited. Also see Baron v. Vallies, 157 Fla. 492, 26 Sou. (2) 449, and cases there cited.

For the reasons stated, the judgment is reversed with directions that the peremptory writ do issue.

THOMAS, C.J., TERRELL and CHAPMAN, JJ., concur.