167 So.2d 86 (1964)
S.S. AGNER, Willie J. Wilder, Norman C. Hendry, Byron Freeman, Rudolph Parker, as and constituting the Board of Public Instruction of Taylor County, Florida, Appellants,
v.
Kenneth B. SMITH, Appellee.
No. F-67.
District Court of Appeal of Florida. First District.
August 6, 1964.
Rehearing Denied September 18, 1964.
*87 Cotten, Shivers, Gwynn & Daniel, Tallahassee, for appellants.
William G. O'Neill, Ocala, for appellee.
STURGIS, Chief Judge.
The appellant, Board of Public Instruction of Taylor County, Florida (hereinafter called the "County School Board"), seeks reversal of a final judgment of the Circuit Court of Taylor County which granted certiorari to the appellee, Kenneth B. Smith (hereinafter called "Teacher"), and thereupon quashed an administrative order of the County School Board cancelling Teacher's continuing contract of employment, then of eight years duration, as a teacher in the public school system of said county. During that period Teacher served a two-year term in the state legislature and was defeated for renomination in the 1962 Democratic primary.
The County School Board filed formal charges against Teacher alleging conduct which if established amounted to a breach of Teacher's continuing contract of employment and constituted grounds for dismissal under Section 230.23(5) (h), Florida Statutes, F.S.A. It was charged, in substance: That on May 28, 1962, May 29, 1962, October 12, 1962, January 10, 1963, January 24, 1963, January 31, 1963, and February 21, 1963, or one or more of said dates, Teacher abused the sick leave privileges afforded to him under Section 231.40, Florida Statutes, F.S.A., in that he filed written claims for sick leave on said dates based on his own illness, when in fact he was not ill but was engaged in the furtherance of a private venture, business or enterprise not related to his duties as a member of the instructional staff of the Taylor County School system. Regarding the absence of February 21, 1963, it was specifically charged that on March 14, 1963, Teacher voluntarily appeared before the County School Board and in answer to a direct question propounded to him on behalf of said board concerning his whereabouts on February 21, 1963, answered to the effect that he was at his residence in Perry, Florida, except for the period of time necessary for him to drive to Cross City, Florida, for the purpose of picking up his newspapers which at that time were being printed in Cross City, and further answered that he remained there for only approximately thirty minutes before returning directly to Perry. It was charged to be the fact, contrary to Teacher's statements to the board, that he went to Cross City on February 20, 1963, and remained there until approximately 2:00 o'clock p.m. on February 21, 1963, and it was charged that Teacher's misstatement to the County School Board in the premises was immoral and constituted misconduct in office which destroyed Teacher's effectiveness as a member of the instructional staff of the public school to which he was assigned as a teacher.
On August 8, 1963, a hearing was held on said charges before the County School Board, all members present, resulting in action of the board purporting to dismiss Teacher from such employment and to cancel his contract of employment. Teacher then filed his petition in the Circuit Court of Taylor County for writ of certiorari and in due course the final judgment herein appealed was entered.
The material pleadings before the circuit court consist of: Teacher's petition for the writ; the County School Board's suggestion of lack of jurisdiction and a supporting brief; an exhibit filed by Teacher, being the affidavit of S. Sevier Agner, who was chairman of the County School Board on the occasion of the hearing of August 8, 1963; an exhibit filed by the County School Board, being a report made to the board by Investigation Bureau of Florida with respect to Teacher's alleged absences; the reporter's transcript of the proceedings at the hearing of August 8, 1963; Teacher's brief in support of the petition in certiorari and the County School Board's brief in opposition thereto.
It appears that Teacher formally answered the charges of the County School *88 Board but the same does not accompany the record. Except as hereinabove noted, there are no pleadings implementing or challenging the facts set out by the petition in certiorari.
The uncontested facts developed at the hearing before the County School Board reveal that Teacher was absent from his teaching duties on the dates specified in the charges and that on each occasion he filed a written certificate claiming sick leave on the ground that such absence was due to his personal illness. It was developed that the absences of Monday and Tuesday, May 28 and 29, 1962, occurred on the day before and the day of the second primary election in Taylor County, wherein Teacher was a candidate for nomination to the Florida House of Representatives, subject to the Democratic primary. It was developed that on Friday, October 12, 1962, Teacher was in Atlanta, Georgia, where he purchased printing equipment with which to carry on a separate enterprise consisting of the publication of a weekly newspaper issued on Thursdays known as the Taco Times. It was developed that his absences from teaching duties on Thursday, January 10, 1963, Thursday, January 24, 1963, and Thursday, January 31, 1963, where occasions when he caused issues of the Taco Times to be printed at places other than Perry, Florida, where he taught and lived; that his absence on Thursday, February 21, 1963, was an occasion when he had caused said newspaper to be printed at Cross City, Florida. The latter absence is the one concerning which he informally appeared before the County School Board on March 14, 1963, and upon inquiry of board members regarding said absence gave answers the alleged falsity of which formed the basis of one or more of the charges made against him as above set forth.
It was Teacher's contention upon the hearing before the County School Board that each of said absences, except when he bought the printing equipment in Atlanta, were in fact due to his own illness; and that when he made the trip to Atlanta he also took his mother along to Ft. McPherson, Georgia, where his brother was in military service, in order that she might there be seen professionally by a doctor who was also in military service at Ft. McPherson but with whom no prior appointment had been made.
Teacher's petition for writ of certiorari asserted, in substance, that due process had been denied to him and his rights violated by the action of the County School Board in that: 1. At said hearing the board erred by receiving in evidence the hereinafter discussed report upon Teacher's activities, made by Investigation Bureau of Florida. 2. That the board's purported dismissal of Teacher and cancellation of his contract is invalid because that action was based on the affirmative votes of only three members of the board, whereas under Section 231.36, Florida Statutes, F.S.A., the affirmative votes of four members are required to accomplish that purpose. 3. Assuming it was duly established that Teacher willfully absented himself from duty without leave, such is not legal ground for cancellation of Teacher's contract of employment.
The County School Board resisted the petition in certiorari on the primary ground that Teacher had not exhausted his administrative remedies and that the circuit court was therefore without jurisdiction to entertain said petition. In that behalf it was contended, as the petition indicates, that as the basis for the writ Teacher relied on the provisions of Section 231.36, Florida Statutes, F.S.A., but had failed to allege or demonstrate that before applying to the circuit court for relief he had exhausted the administrative remedy provided thereunder by having the action of the County School Board reviewed by the State Board of Education.
As with any legislative program involving a subject of such magnitude as the enactment of a statewide and uniform system of public education, it is inevitable that the effort will be attended by many errors of omission and commission; that many provisions *89 will be found to be vague, indefinite, duplicitous, sometimes contradictory, and all too often so inharmonious as to be quite unexplainable. The Florida School Code is no exception and the problems latent in this appeal provide an excellent example of statutory shortcomings which it were doubtless better to boil in the crucible of legislative adjustment than to stir in the kettle of judicial experimentation. However, the appellant school board has cried out for guidelines and we respond by dangling a few.
The County School Boards are highly important adjuncts of the public school system. Exercising only such powers as vested by the legislature and subject to such supervisory powers as are clearly vested in the State Board of Education, the County School Boards nevertheless are essentially autonomous bodies which by reasonable implication perform many functions that are not specifically spelled out by statutory law. Such boards are remnants, however shorn, of the broad power over school affairs once exercised at the local level and as such continue to perform a vital service to the body politic. The remaining powers should not be frittered away by technical judicial limitations thereon or by strained statutory interpretation having that effect.
We now examine several areas of the School Code pertinent to this appeal:
Section 229.08(16), Florida Statutes, F.S.A., empowers the State Board of Education:
"(16) To hear and determine controversies.  To advise and counsel with school officials concerning the interpretation and meaning of the school code and the rules and regulations adopted pursuant thereto; and whenever practicable to adjust amicably and settle such controversies arising thereunder as may be submitted to it by all persons directly concerned."
The appellant County School Board contends that the State Board of Education is thereby constituted a quasi-judicial body with power initially to review its action discharging Teacher, a member of its instructional staff. We do not agree. Unless otherwise specified by a statute or arising by necessary implication, the captions thereto are nothing more than catch phrases, inserted as an aid or convenience to research, and as such have no legal intendment. The caption to the above subsection sheds no light on the issues of this appeal, and a cursory examination of the text reveals no legislative intent to vest the State Board with power to judicially review the challenged action of the County School Board.
Section 230.23, Florida Statutes, F.S.A., defines the powers and duties of the County School Board. Under subsection (5) thereof, relating to "PERSONNEL," the County School Board is authorized to
"Designate positions to be filled, prescribe qualifications for those positions, and provide for the appointment, compensation, promotion, suspension, and dismissal of employees * * *, subject to the requirements of chapter 231; * * *." (Emphasis added)
Under paragraph (h) of said subsection the County School Board is authorized to
"Suspend or dismiss members of the instructional staff and other school employees; provided, that no administrative assistant, supervisor, principal, teacher, or other member of the instructional staff may be discharged or removed during the term for which he is employed without opportunity to be heard at a public hearing after at least ten days' written notice of the charges against him and of the time and place of hearing; and, provided further, that the charges must be based on immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunkenness, or conviction of any crime involving moral turpitude. Whenever such *90 charges are made against any such employee of the county board, the county board may suspend such person without pay, pending a speedy hearing of such charges, but if charges are not sustained he shall be immediately reinstated, and his back salary shall be paid. In cases of suspension by the county board or by the county superintendent, the county board shall hold a public hearing, after notice as above provided, to determine upon the evidence submitted whether the charges have been sustained and, if said charges are sustained, either to dismiss said employee or fix the terms under which said employee may be reinstated. If such charges are sustained and such employee is discharged, his contract of employment is thereby canceled."
The County School Board relied exclusively on this statute in preferring charges against Teacher. It is seen that by this statute the grounds for removal are "immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunkenness, or conviction of any crime involving moral turpitude"; that charges must be preferred; that the employee is entitled to a public hearing thereon before the County School Board; that if the charges are not sustained by the evidence, he is automatically reinstated and entitled to be paid his back salary; and that if from the "evidence submitted" the charges are sustained, the board may dismiss the employee or fix the terms under which he may be reinstated. If the board discharges the employee, "his contract of employment is thereby canceled."
It is seen that Section 230.23(5) (h) does not by its terms require an affirmative vote of more than a majority of the members of the County School Board in order to take action adverse to the employee. It follows that absent other statutory provisions, the vote of the majority would control proceedings thereunder. However, such provisions do exist, as will be seen by Section 231.36(3), Florida Statutes, F.S.A., which provides:
"Any member of the instructional staff, including any principal, who is under continuing contract may be dismissed or may be returned to annual contract status for another three years when a recommendation to that effect is submitted in writing to the county board on or before April 1 of any school year, giving good and sufficient reason therefor, by the county superintendent, or by the principal if his contract is not under consideration or by a majority of the county board. The employee whose contract is under consideration shall be duly notified in writing by the party or parties preferring the charges at least five days prior to the filing of the written recommendation with the county board, and such notice shall include a copy of the charges and the recommendation to the county board. If the employee upon being officially notified in writing by the county board that it will consider the charges filed against him wishes a public hearing, he shall notify the board in writing within ten days after the date of the official notice. Upon receiving such a request, the county board shall within ten days notify the teacher of the time and place of the public hearing. In the event the teacher does not request a public hearing, the county board shall proceed to take appropriate action. Any decision adverse to the employee shall be made by an affirmative vote of four members of the county board. Any such decision adverse to the employee may be appealed by him in writing to the state board, through the state superintendent, for review; provided such appeal is filed within thirty days after the decision of the county board, and provided further that the decision of the state board shall be final as to sufficiency or insufficiency for dismissal or discontinuation *91 of the continuing contract status."
It is clear that Teacher's dismissal and the cancellation of his continuing contract of employment was undertaken on the basis of the affirmative votes of only three members of the County School Board. Reading the statutory provisions in pari materia, it is also clear that it was the legislative intent to require the affirmative vote of four members as prescribed by F.S. Section 231.36(3), F.S.A. in order to suspend or dismiss an employee of the class stated. The County School Board exceeded its authority by undertaking to cancel Teacher's contract upon the affirmative action of only three of its members.
It is unnecessary under the circumstances to explore the question of the admissibility before the board of the challenged evidence. We deem it appropriate to observe, however, that while the strict rules of evidence applying to formal court proceedings do not govern hearings before an administrative board as here involved, the evidence relied upon by a quasi-judicial tribunal to sustain its ultimate finding should, in the language of Mr. Justice Thornal in DeGroot v. Sheffield, 95 So.2d 912 (Fla. 1957), "be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the `substantial' evidence should also be `competent.'" A lawfully created fact-finding and disciplinary board as here involved acts at least in a quasi-judicial capacity. Its findings are entitled to great weight and should not be reversed unless there is no competent, substantial evidence to support the same. U.S. Casualty Co. v. Maryland Casualty Co., 55 So.2d 741 (Fla. 1951). As a general rule, on certiorari a court will not ordinarily substitute its judgment for that of an administrative agency acting within its powers; however, that rule has often been relaxed in considering quasi-judicial decisions that impair vested legal rights. State v. Whitman, 116 Fla. 196, 150 So. 136, 156 So. 705, 95 A.L.R. 1416 (1934); State v. Rowlett, 125 Fla. 562, 170 So. 311 (1936); Butler v. Carter, 123 So.2d 313 (Fla. 1960).
Having accepted the proposition that the proceeding before the County School Board was governed by F.S. 231.36 (3), F.S.A. and was inoperative to adversely affect Teacher's rights because there were only three votes adverse to Teacher's interest, rather than four as required by the statute, we must concede that our conclusion lends force to the County School Board's contention that the petition in certiorari was premature, based on the fact that Teacher had not exhausted the administrative remedy specifically afforded by that statute for review of the board's action. It follows that were we to strictly apply to this case the rule prevailing in this jurisdiction which requires the administrative remedy to be exhausted before review by the courts, it would be necessary to reverse the final judgment in this cause and relegate Teacher to the necessity of having the decision of the County School Board reviewed by the State Board of Education by an appeal to that body as provided by the statute. It is obvious, however, that such disposition would operate only to protract this litigation, with added expense and inconvenience to all concerned, and that the ultimate result should conform to the conclusion we have reached as to the ineffectiveness of the County School Board's action. Faced with this cul-de-sac, being aware that this is a case of first impression, and being conscious of the atmosphere of uncertainty in which the parties have traveled, which we apprehend is due primarily to the vague and indefinite character of the statutory enactments on the subject, we have determined that the peculiar circumstances of this case warrant treatment out of the ordinary. Accordingly, the final judgment appealed, being sound on the premise we have indicated, is affirmed.
We anticipate that the School Code will be amended at an early opportunity to more *92 clearly define the procedures to be followed in respect to the suspension and dismissal of employees in the public school system; and we would be amiss if we failed to caution all interested persons that our disposition of the instant appeal rests exclusively on the peculiar facts here involved and is not to be taken as establishing a general exception to the rule that requires exhaustion of the administrative remedy before resort to the courts.
Affirmed.
RAWLS, J., concurs.
CARROLL, DONALD K., J., dissents.
CARROLL, DONALD K., Judge (dissenting).
I dissent from the majority opinion for the jurisdictional reason that the appellee failed to exhaust the administrative remedy provided by Section 231.36(3), Florida Statutes, F.S.A. That section provides in pertinent part with reference to a decision of a county board of education dismissing a member of the instructional staff who is under a continuing contract, or returning him to annual contract status:
"Any such decision adverse to the employee may be appealed by him in writing to the state board, through the state superintendent, for review; provided such appeal is filed within thirty days after the decision of the county board, and provided further that the decision of the state board shall be final as to sufficiency or insufficiency for dismissal or discontinuation of the continuing contract status."
Few principles are more firmly imbedded in the jurisprudence of this state than the doctrine of exhaustion of administrative remedies, which doctrine requires that, where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act. See, for instance, 1 Fla.Jur., Administrative Law, sections 175 and 234. One of the leading decisions of the Supreme Court of Florida recognizing the said doctrine is De Carlo v. West Miami, 49 So.2d 596 (Fla. 1950), in which the court held that injunctive relief was not available without exhausting the administrative remedies under a certain zoning ordinance. A more recent recognition by the Supreme Court of the said doctrine occurred in Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla. 1961), the court saying:
"This Court has consistently held that where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act. The doctrine has been referred to as the exhaustion of administrative remedies. It is related to the doctrine of primary jurisdiction. An examination of the many authorities of texts on this question reveals a consistent attitude of the courts that judicial intervention with administrative action is justified only in those instances where the invalidity of the administrative act is not subject to reasonable differences of opinion."
In numerous other decisions the appellate courts of this state have applied the same doctrine to instances in which there was a failure to exhaust the administrative remedies provided by a statute. One of these cases involved the statutory remedy of appeal to the State Board of Public Instruction from an action of a County Board of Education (though under a different statute from that applicable in the instant case)  Ferris v. Board of Public Instruction of Sumter County, 119 So.2d 389 (Fla. App. 1960). This was a proceeding in mandamus to compel the County Board of Public Instruction to approve the transfer of certain school children from one school to another. The Circuit Court entered an order quashing the alternative writ and dismissing the cause with prejudice. On appeal the District Court of Appeal, Second *93 District of Florida, affirmed the said order, saying:
"It is also noticed that under section 230.232(3) (b), if any party disagrees with the action of the County Board of Public Instruction, that party has an administrative remedy which is, in effect, an appeal to the State Board of Public Instruction. It is generally held that mandamus actions or other resorts to the court will not be upheld until the parties seeking the writ have exhausted their administrative remedies. Hennessy v. City of Fort Lauderdale, Fla.App. 1958, 101 So.2d 176."
The appellee in the present appeal failed to follow the administrative remedy so clearly provided by the statute (Section 231.36(3)) of appealing the appellants' adverse decision to the State Board. Under the doctrine and decisions discussed above, I think we have no alternative to reversing the final judgment appealed from herein, and I therefore dissent.