302 So.2d 821 (1974)
STATE of Florida ex rel. Floyd T. CHRISTIAN, Relator,
v.
The Honorable John A. RUDD and the Honorable Ben C. Willis, As Judges of the Circuit Court, in and for Leon County, Florida, Respondents.
No. W-313.
District Court of Appeal of Florida, First District.
November 5, 1974.
*822 Joseph C. Jacobs and E.C. Deeno Kitchen of Ervin, Varn, Jacobs & Odom, Tallahassee, and Robert L. Floyd and Michael A. Pohl of Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for relator.
Robert L. Shevin, Atty. Gen., Raymond L. Marky, Asst. Atty. Gen., T. Edward Austin, Jr., Aaron K. Bowden and Robert S. Willis, Jacksonville, for respondents.
PER CURIAM.
We here consider an Alternative Pleading filed by Relator, praying for Writ of Prohibition or in the Alternative our Writ of Common Law Certiorari.
This case is companion to, but not consolidated with, State of Florida ex rel. Floyd T. Christian v. The Honorable T. Edward Austin and The Honorable Aaron K. Bowden and The Honorable Robert Willis, as Assigned State Attorney and Assigned Assistant State Attorneys of the Second Judicial Circuit in and for Leon County, Florida, Case No. W-312, 302 So.2d 811, in which our opinion was filed this date. The relevant factual background is recited in that opinion and will not be here repeated.
After the indictments were returned Relator resigned his office as Commissioner of Education. Subsequent to arraignment he filed motions in the Circuit Court seeking to have dismissed the indictments against him, the thrust of his arguments being that in his capacity as Commissioner of Education he was not subject to indictment prior to impeachment and conviction in the manner prescribed by law and that unauthorized persons were present in the Grand Jury room during the time that evidence was presented which unauthorized persons actually conducted the interrogation of Petitioner before the Grand Jury in violation of F.S. 905.17(1) and F.S. 905.19. Those Motions were denied by the trial judge.
*823 Our jurisdiction was invoked by the filing of a Petition for Writ of Prohibition, which contained an Alternative Prayer that in the event we should determine Prohibition inappropriate then the Petition be considered and treated as a Petition for Writ of Common Law Certiorari. We issued Rule Nisi and Respondents have filed their return.
While prohibition under certain circumstances might be available (see Eberhardt v. Barker, 1932, 104 Fla. 535, 140 So. 633; State ex rel. Crabtree v. Porter, 1933, 111 Fla. 621, 149 So. 610; State ex rel. Pearson, et al. v. Trammell, et al., 1936, 124 Fla. 543, 169 So. 45; and State ex rel. Schwarz v. Heffernan, 1940, 142 Fla. 137, 194 So. 313) we do not find it to be the proper remedy sub judice. (State ex rel. Losey v. Willard, Sup.Ct. Fla. 1951, 54 So.2d 183 and Crill v. State Road Department, et al., 1928, 96 Fla. 110, 117 So. 795) Accordingly the Petition for Writ of Prohibition is denied.
We do, however, find common law certiorari to be appropriate under the facts of this particular case. This Court has often recognized that the issuance of the common law writ of certiorari to an inferior court lies in the sound judicial discretion of the Court and that the writ may be issued to correct the procedure of courts wherein they have not observed those requirements of law deemed to be essential to the administration of justice. In Gay v. City of Gainesville, Fla.App. 1st 1966, 186 So.2d 41, we said:
"* * * A common law writ of certiorari issues in the sound judicial discretion of the court, the function of which is to cause the entire record of an inferior court to be brought up in order that it may be determined from the face thereof whether the inferior court has exceeded its jurisdiction, or has not proceeded according to the essential requirements of law. Confined to its legitimate scope, the writ may issue in the court's discretion to correct the procedure of an inferior court which has failed to observe those requirements of law which are deemed to be essential to the administration of justice." (186 So.2d at page 43)
(See also State v. Smith, Fla.App. 1st 1960, 118 So.2d 792; and Townsend v. State, Fla.App. 1st 1957, 97 So.2d 712)
In Girten v. Bouvier, Fla.App. 2nd 1963, 155 So.2d 745, our sister court of the Second District said, relative to the granting of common law certiorari:
"* * * Only in exceptional cases, such as those where the lower court acts without or in excess of jurisdiction, or where the interlocutory order does not conform to the essential requirements of law and may reasonably cause material injury throughout the subsequent proceedings for which remedy by appeal will be inadequate, will the appellate court exercise its discretionary power to issue the writ. See Wolf v. Industrial Supply Corp., Fla. 1952, 62 So.2d 30; Kauffman v. King, Fla. 1956, 89 So.2d 24; Taylor v. Board of Public Instruction of Duval County, Fla.App. 1961, 131 So.2d 504. * * *" (155 So.2d at page 748)
In another opinion of the Second District, Leithauser v. Harrison, Fla.App. 2nd 1964, 168 So.2d 95, that Court said:
"Certiorari is a discretionary writ which will be issued only where the lower court acts without or in excess of jurisdiction or where the interlocutory order does not conform to the essential requirements of law and may reasonably cause material injury throughout the subsequent proceedings for which the remedy by appeal will be inadequate. Kauffman v. King, Fla. 1956, 89 So.2d 24. Normally, orders entered in discovery proceedings do not qualify for review under the above rule. However, review has been granted in exceptional cases where it appeared, among other things, that such orders *824 were reasonably likely to result in substantial injury. * * *" (168 So.2d at page 97)
In recognition of exceptional circumstances, the District Court of the Second District again, in Rich v. Harper Neon Company, Fla.App. 2nd 1960, 124 So.2d 750, held that since numerous condemnation cases were arising all over the State the court would entertain common law certiorari to pass upon an interlocutory order entered in an eminent domain proceeding.
Should we now refuse to act, deferring consideration until an appeal following trial should there be a conviction, the only practical result would be the great expense of time and money incurred by the Relator as well as the public. We are ever mindful of the great tax burden placed upon those who support our government and prefer to relieve them of undue expenses whenever feasible. Too, the achieving of justice is the primary responsibility of courts. We exercise our discretion and grant common law certiorari.
We do not agree with Petitioner's contention that he could not be indicted prior to impeachment or conviction pursuant to Article III, Section 17, Constitution of Florida, resignation or completion of his term of office. Article III, Section 17, Constitution of Florida, provides, in pertinent part as follows:
§ 17. Impeachment
(a) The governor, lieutenant governor, members of the cabinet, justices of the supreme court, judges of the district courts of appeal and judges of circuit courts shall be liable to impeachment for misdemeanor in office.
* * * * * *
"(c) * * * Judgment of conviction in cases of impeachment shall remove the offender from office and, in the discretion of the senate, may include disqualification to hold any office of honor, trust or profit. Conviction or acquittal shall not affect the civil or criminal responsibility of the officer." (Emphasis added)
There have been numerous cases in other jurisdictions in which indictments or informations have been returned against incumbent officials. (State ex rel. Olson v. Langer, 65 N.D. 68, 256 N.W. 377 (1934)  Indictment for commission of felony and conviction of Governor of North Dakota while in office; State ex rel. DeConcini v. Sullivan, 66 Ariz. 348, 188 P.2d 592 (1948)  Attorney General convicted of felony of conspiracy to violate the gambling laws. See also: 67 C.J.S. Officers § 133; Briggs v. Board of County Commissioners of Muskogee County, et al., 202 Okla. 684, 217 P.2d 827, 20 A.L.R.2d 727)
In response to this identical point in In re Investigation by Dauphin County Grand Jury, September, 1938, 332 Pa. 342, 2 A.2d 804, the Supreme Court of Pennsylvania in interpreting a constitutional provision almost identical to the impeachment provision of our Florida Constitution and in being confronted with a similar separation of powers argument, explained petitioner's position and held as follows:
"Petitioner stands on Article 6 of the constitution, dealing with impeachments, section 1, P.S.Const. art. 6, § 1, providing that, `The House of Representatives shall have the sole power of impeachment', and section 3, P.S.Const. art. 6, § 3, that `The Governor and all other civil officers shall be liable to impeachment for any misdemeanor in office, but judgment in such cases shall not extend further than to removal from office and disqualification to hold any office of trust or profit under this Commonwealth; the person accused, whether convicted or acquitted, shall nevertheless be liable to indictment, trial, judgment and punishment according to law.' Petitioner contends that as the sole power of impeachment has been delegated to the House of Representatives, the legislature may, on the conditions specified in Act number 4, halt the grand jury investigation *825 of crimes alleged to have been committed by impeachable officers.
* * * * * *
"Both parties, in support of their positions, refer to the doctrine of the separation of governmental powers into legislative, executive and judicial.
* * * * * *
"The right of the people to be protected against crime and their opportunity of ascertaining and punishing the criminal, as well as the criminal's right (except where by leave of court he may be proceeded against for oppression or misdemeanor in office), is therefore not only as fully recognized in the constitution as the power to impeach civil officers is recognized, but as it appears in the Declaration of Rights, may furnish some ground for argument that it has precedence over the impeachment power, a point not now necessary to be determined.
"It cannot be denied that the power already exercised by the court of quarter sessions and by this court in its judgments rendered in the same proceeding is the exercise of judicial power. The delegation of the House of Representatives of the sole power of impeachment did not have the effect of depriving the court of its power to continue the investigation in the existing proceeding of crimes constituting misdemeanor in office. This is emphasized by the provision in section 3 of the sixth article, P.S. Const. art. 6, § 3, that `the person accused [in impeachment proceedings], whether convicted or acquitted, shall nevertheless be liable to indictment, trial, judgment and punishment according to law.' The two proceedings are independent of each other and as the Declaration of Rights shows, were intended to be kept independent proceedings. The provision that the accused shall be liable to indictment `whether convicted or acquitted' does not require halting criminal proceedings until after the impeachment. The provision was probably inserted so that there might be no doubt that the result of a trial in either proceeding should not be a bar to the trial in the other. Petitioner refers to the corresponding provision of the federal constitution and quotes from number LXV of The Federalist, to support the argument that the impeachment trial should precede the criminal proceeding. But the federal constitution, U.S.C.A.Const. art. 1, § 3, cl. 7, deals only with conviction, not with conviction or acquittal: `But the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law.' Our constitution subjects the accused to prosecution regardless of whether `convicted or acquitted' in the impeachment trial, thereby indicating that, as the result of the impeachment trial should be immaterial in its effect on the criminal trial, there would be no reason for delaying the criminal proceeding."
(See also Commonwealth v. Kirk, 340 Pa. 346, 17 A.2d 195, 201 (1941); State ex rel. Moore v. Blake, 225 Ala. 124, 142 So. 418 (1932))
We find no merit in Petitioner's argument that the indictments should be dismissed on the ground that they were returned prior to his resignation from office.
However, we do find substantial merit in petitioner's argument that grievous prejudicial error was committed by not only allowing unauthorized persons in the Grand Jury room during investigation and deliberation in violation of law but also the allowing of such unauthorized personnel to conduct the actual interrogation and investigations. Section 27.14, Florida Statutes, provides:
"Assigning state attorneys to other circuits. If any state attorney shall be disqualified to represent the state in any case pending in the courts of his circuit, or if for any other good and sufficient reason the governor of the state thinks that the ends of justice would be best *826 served by an exchange of state attorneys, the governor may require an exchange of circuits or of courts between such state attorney and any other state attorney of the state, or may assign any state attorney of the state to the discharge of the duties of state attorney in any circuit of the state. Any exchange or assignment of any state attorney hereunder to a particular circuit for a period in excess of sixty days in any one calendar year must be approved by order of the supreme court upon application of the governor showing good and sufficient cause to extend such exchange or assignment."
The above statute clearly gives the Governor the power to assign a State Attorney from one circuit to another, but we know of no statutory authority for the executive assignment of Assistant State Attorneys from one circuit to another. The statute limits that power to the assignment of State Attorney. Even if such authority did exist the power could not have been delegated by the Governor to anyone else. The record before us indicates that in addition to State Attorney Austin, two other attorneys who were Assistant State Attorneys in the Fourth Judicial Circuit but who have no legal standing in the Second Judicial Circuit, other than that of a citizen or private attorney, participated in the Grand Jury proceedings. The record further reveals that State Attorney Austin and his two visitors were all three in the Grand Jury room at the same time with the unauthorized visitors in actual or practical charge of the proceedings and the conducting of the investigation, in total violation of Section 905.17(1), Florida Statutes, which provides:
"No person shall be present at the sessions of the grand jury except the witness under examination, the state attorney or his designated assistant, the court reporter or stenographer, and the interpreter. The stenographic records, notes, and transcriptions made by the court reporter or stenographer shall be filed with the clerk who shall keep them in a sealed container not subject to public inspection. The notes, records, and transcriptions shall be released by the clerk only on request by a grand jury for use by the grand jury or on order of the court pursuant to § 905.27."
and Section 905.19, which provides:
"Duty of state attorney. The state attorney or an assistant state attorney shall attend sessions of the grand jury to examine witnesses and give legal advice about any matter cognizable by the grand jury. The state attorney or an assistant state attorney shall draft indictments."
Even were the Assistant State Attorneys of the Fourth Judicial Circuit properly assigned to the Second Judicial Circuit, they were nevertheless without legal right to appear simultaneously with the Assigned State Attorney during the Grand Jury proceedings. Florida Statute 905.17(1) is specific as to whom may be present at sessions of the Grand Jury and the reference there to the State Attorney and his designated assistant is in the disjunctive. It is perfectly clear that the conjunction "or" there employed means one or the other but not both. Further, there is nothing in the statute to suggest that the words "designated assistant" is intended to include the plural, allowing for more than one designated assistant. Florida Statute 905.19 also employs the conjunction "or" and the article "an". Too it clearly provides that the State Attorney "or an" Assistant State Attorney shall attend sessions of the Grand Jury.
Additionally, as we have held this day in State of Florida ex rel. Floyd T. Christian v. The Honorable T. Edward Austin and The Honorable Aaron K. Bowden and The Honorable Robert Willis, as Assigned State Attorney and Assigned Assistant State Attorneys of the Second Judicial Circuit in and for Leon County, Florida, the assignment of the State Attorney of *827 the Fourth Judicial Circuit as well as his designated Assistants was not in accordance with the statutory authority available for such purposes.
Courts of this State have found that the presence of unauthorized persons in the Garnd Jury room in violation of statutory authority constitutes grounds for dismissal or quashal of the indictment. (State v. Papy, Fla.App.3rd 1970, 239 So.2d 604; State v. Gartenmayer, Fla.App.3rd 1970, 239 So.2d 116 and State ex rel. Losey v. Willard, Sup.Ct.Fla. 1951, 54 So.2d 183. See also annotation in 4 A.L.R.2d at page 392 et seq.)
In the case sub judice we not only have the presence of unauthorized persons in the Grand Jury room but we also have their actual participation in the Grand Jury proceedings. This is a totally unorthodox procedure.
We do not overlook Dotty v. State, Fla. App.4th 1967, 197 So.2d 315, relied upon by Respondents, in which our sister court of the Fourth District held an indictment for rape should not be vitiated for the reason that both the prosecuting attorney and one assistant prosecuting attorney were present before the Grand Jury at the same time. The court, in its opinion, found the above procedure not violative of Florida Statutes 905.17 and 905.19 as enacted by the Legislature in 1939, and as they existed at the time of the decision. Both statutes were subsequently amended by the 1970 Florida Legislature, in pertinent part as follows:
Florida Statute 905.17 (1939-1970)
"No person shall be present at the sessions of the grand jury except * * * the prosecuting attorney * * *."
Florida Statute 905.17 (1970-1974)
"No person shall be present at the sessions of the grand jury except * * * the state attorney or his designated assistant * * *."
Florida Statute 905.19 (1939-1970)
"The prosecuting attorney or assistant prosecuting attorney shall attend the grand jury * * *."
Florida Statute 905.19 (1970-1974)
"The state attorney or an assistant state attorney shall attend * * *."
In view of the foregoing legislative amendments, a finding that Sections 905.17 and 905.19 authorize the presence before the Grand Jury of the State Attorney and two Assistant State Attorneys at the same time requires the following judicial amendments to the statutes in question.
 1. 905.17  Strike "or" and insert in lieu thereof
 "and".
 2. 905.17  Strike "assistant" and in lieu thereof
 insert "assistants".
 3. 905.19  Strike "or" and in lieu thereof insert
 "and".
 4. 905.19  Strike "an".
 5. 905.19  Strike "attorney" and in lieu thereof
 insert "attorneys".
 6. 905.19  Strike "shall" and in lieu thereof insert
 "may".
Additionally, this Court must conclude that the intention of the Legislature was to give the meaning and effect to the statute as so amended.
The integrity of the Grand Jury system has traditionally been meticulously protected. Such was the concern of the Legislature when it enacted the statutes above quoted, specifically delineating those authorized to be present during Grand Jury proceedings.
The Grand Jury is a creature of the common law. While referred to in earlier times, the Grand Jury in its present-day form was first employed during the reign of Edward III (circa 1368). At that time, the sheriff returned a panel of 24 knights to inquire at large for the county, and this body was termed "Le Graunde Inquest". (King v. Fitch, Cro.Chas. 414) "Le Graunde Inquest" took its name from the fact that it was taken from the county at large, in contrast to one taken from the hundred. It was originally intended to be an arm of the Crown, "acting as a public prosecutor for the purpose of ferreting out *828 all crimes, with the members of the inquest being at all times bound to inform the court either singly or collectively their reasons for arriving at their verdict and the evidence upon which it was based." Clemmons v. State, Fla.App. 1st 1962, 141 So.2d 749, modified, Sup.Ct.Fla. 1963, 150 So.2d 231. The Grand Jury, however, soon began to exercise its independent judgment. This independence grew to such an extent that, in the proceedings against the Earl of Shaftesbury in 1681, the Grand Jury ignored threats from Lord Chief Justice Pemberton and stood firm. Thus, much to the initial dismay of the Crown, the Grand Jury came to function as a protector of the liberty of the people and as a buffer between the people and the Crown.
The Grand Jury arrived in this country with its inquisitorial and accusatorial powers intact. It is a vital part of our legal system today, with a varying number of members in the several states. Its sittings and deliberations are in secret, usually ex parte. Although its function as a bulwark against the oppression of the sovereign is of somewhat lesser importance now, its importance as a protector of a citizen against unfounded accusations prompted by partisan passion or private enmity can hardly be denied. (Sawyer v. State, 1927, 94 Fla. 60, 113 So. 736)
In Florida, the Grand Jury has been and remains a significant part of our legal system. In both the Constitutions of 1838 and 1861, Article I, Section 16 provided, "That no person shall be put to answer any criminal charge but by presentment, indictment, or impeachment." Every subsequent Constitution has authorized the existence of the Grand Jury in Florida, including the present Florida Constitution  1968 revision. Article I, Section 15(a). Further evidence of the present status of the Grand Jury in Florida is found in Florida Statutes, Chapter 40, which deals with qualifications and selection of grand jurors and Chapter 905 which deals with the composition and the duties of the Grand Jury.
Speaking of the Grand Jury, the Chief Judge of this Court has stated, "This institution bears a place within our governmental structure and our system of justice on an equal footing with the courts. It has been variously referred to as a coordinate branch of the judiciary, and as an arm, appendage, or adjunct of the circuit court. It is of the people and for the people; they have reserved it in their constitution. It is one of the means provided for the people to participate in popular government and its primary function is to preserve personal and property rights." (Clemmons v. State, ibid. 141 So.2d at 753) The statements of Chief Judge Rawls remain equally true today.
One of the most significant aspects of the Grand Jury is the element of secrecy. From the earliest time, common law required that members of the Grand Jury should not disclose what transpired before that body in the course of their investigations. The Supreme Court of the United States has concluded that the long established policy of secrecy is essential to the efficacy of the Grand Jury. In the absence of secrecy, not only would the independence of the grand jurors be curtailed, but testimony would be parsimonious if each witness knew that his testimony would soon be public knowledge. (Pittsburgh Plate Glass Company v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959))
As the United States Court of Appeals has noted, the tradition of secrecy rests on a number of interests: The interest of the government against disclosure of its investigation of crime which may forewarn the intended object of its inquiry or inhibit future witnesses from speaking freely; the interest of a witness against disclosure of testimony of others which he has had no opportunity to cross examine or rebut, or of his own testimony on matters which may be irrelevant or where he may have been subjected to prosecutorial brow-beating without the protection of counsel; the *829 similar interests of other persons who may have been unfavorably mentioned by Grand Jury witnesses or in questions of the prosecutor; protection of witnesses against reprisals; and the interest and protection of the grand jurors themselves. (In re Biaggi, 478 F.2d 489, 491 (2nd Cir.1973))
The Supreme Court of Florida has also recognized that secrecy is necessary to the efficient operation of the Grand Jury. (Clein v. State, Sup.Ct.Fla. 1961, 52 So.2d 117) No less than four sections of the current Florida Statutes impose the secrecy requirement on Grand Jury proceedings. (F.S. 905.24-905.27) Only three exceptions to this requirement are mentioned in the Florida Statutes. (F.S. 905.27(1)(a), (b), (c)) Any other disclosure of Grand Jury proceedings is made unlawful and is punishable by a jail sentence of up to one year and/or a fine up to $5,000.
The Legislature also obviously recognized the traditional secrecy of Grand Jury proceedings, and intended to preserve same when it enacted the statute limiting the number of persons who might properly attend the proceedings of that body. We only need resort to our own common sense and recent every day experiences to determine the Legislature's wisdom, if the policy of the law of secrecy is to be maintained. The more ears that hear and the more eyes that see, the more tongues are inclined to wag, resulting in "leaks", all of which tend to degrade our Grand Jury system; indeed, our entire system of jurisprudence.
We acknowledge here as we did in State of Florida ex rel. Floyd T. Christian v. The Honorable T. Edward Austin and The Honorable Aaron K. Bowden and The Honorable Robert Willis, as Assigned State Attorney and Assigned Assistant State Attorneys of the Second Judicial Circuit in and for Leon County, Florida, supra, that we are fully cognizant that this decision will in no wise ultimately affect the prosecution of Petitioner on the charges lodged against him, nor is it so intended. The only thing accomplished by this decision is the assurance of fair and equal application of the law to all persons, of high office or low, and the avoidance of the harassment and expenditure necessarily attendant upon a long and tedious trial for the State (taxpayers) as well as the defendant which would, by virtue of the matters herein mentioned, achieve nothing. For, as recited in the said last mentioned case, there is nothing to prevent the State Attorney of the Second Judicial Circuit or an Assigned State Attorney, should he be properly assigned in accordance with statutory authority, from filing an information against Petitioner, if he is convinced of the existence of probable cause for so doing, charging the identical crimes as those set forth in the indictment of the Grand Jury.
Having determined that reliance by the trial judge upon Dotty v. State, supra, was misplaced and that the motion addressed to the charges for which Petitioner was sought to be tried (except the motion asserting executive immunity prior to impeachment and conviction) should have been granted, we reverse and remand for further proceedings consistent herewith.
It is so ordered.
RAWLS, C.J., and BOYER and JOHNSON, JJ., concur.