311 So.2d 713 (1975)
Jack R. WHEELER, Appellant,
v.
STATE of Florida, Appellee.
No. 74-449.
District Court of Appeal of Florida, Fourth District.
April 25, 1975.
*714 Joseph A. Varon of Varon, Stahl & Kay, Hollywood, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Thomas M. Carney, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
For many years appellant has been a public official in Broward County. On *715 September 26, 1973, the Broward County grand jury indicted appellant for perjury in connection with testimony he gave before the grand jury during its investigation of the conduct of appellant's public office.
Appellant testified before the grand jury that in February 1969 appellant and his wife entered into a written employment contract pursuant to which his wife would work in his office for a period of five years at a specified annual salary. Appellant identified a written document presented to him as the contract in question. The indictment in question charged that appellant committed perjury when he gave the foregoing testimony because he knew it was false and because it pertained to a material matter the grand jury was investigating, namely, appellant's employment of his wife while he was a public official. Appellant was tried by a petit jury, convicted of perjury, and sentenced to three years imprisonment.
Appellant suggests five points requiring reversal, only three of which require comment: (1) he was not advised of his constitutional rights before testifying before the grand jury; (2) the indictment was invalid because more than one assistant state attorney appeared simultaneously before the grand jury while testimony was being adduced; (3) the state failed to prove the allegedly false testimony was material to the grand jury inquiry.
Under point one appellant complains that he was not advised of the nature of the grand jury's inquiry, nor was he given any Miranda warnings prior to testifying. However, this point is without merit. A witness testifying before a grand jury or prosecuting attorney does not have a right to be advised of the nature of the inquiry before testifying. Dinnen v. State, Fla.App. 1964, 168 So.2d 703; In re Black, 47 F.2d 542 (2nd Cir.1931); United States v. Schaier, 175 F. Supp. 838, 842 (S.D.N.Y. 1959). Nor is a witness appearing before a grand jury entitled to the usual Miranda warnings. State ex rel. Lowe v. Nelson, Fla.App. 1967, 202 So.2d 232, affirmed Fla. 1968, 210 So.2d 197.
Appellant's second point that the indictment was defective because several assistant state attorneys simultaneously attended the grand jury during presentation of testimony was based upon the construction the District Court of Appeal, First District, placed upon §§ 905.17 and 905.19, F.S. in State ex rel. Christian v. Rudd, Fla.App. 1974, 302 So.2d 821. However, the Supreme Court rejected that interpretation of §§ 905.17 and 905.19, F.S. 1973, and held that said sections authorized the presence of more than one qualified assistant state attorney to be present at grand jury sessions. Rudd v. State ex rel. Christian, Fla. 1975, 310 So.2d 295, opinion filed February 10, 1975. Thus, it appears appellant's second point is ill-founded.
Appellant's third point is more troublesome. By appropriate assignments of error and argument in his brief, appellant contends that the evidence adduced at trial was insufficient for the petit jury trying the case to determine whether appellant's grand jury testimony was material to the grand jury inquiry.
The law is well established in this jurisdiction that one of the essential elements of the crime of perjury is that the false testimony must be on a material point. 25 Fla.Jur., Perjury, § 6. In the case of false testimony before a grand jury, the testimony must be material to the subject matter about which the grand jury is inquiring. Gordon v. State, Fla. 1958, 104 So.2d 524, 530-531. Accordingly, the indictment must explicitly describe the matter which was being investigated by the grand jury, and as to which the witness was testifying when he gave the false testimony. 25 Fla.Jur., Perjury, § 29. As with other essential elements of any crime, the state must at the trial of the perjury charge prove the materiality of the false testimony. Unlike the essential elements of other crimes, the determination of *716 whether materiality has been sufficiently proven is generally a question of law for the court. Wolfe v. State, Fla. 1972, 271 So.2d 132.
In the case at bar the trial judge submitted the question of materiality to the jury upon appropriate instruction for their decision even though in this case, there being no evidentiary conflict, it was a question of law for the court. The jury by its verdict obviously found appellant's testimony was material to the grand jury's inquiry. Appellant is hardly in a position to complain about the court's submission of the materiality issue to the jury because, as Judge Cowart noted in Wilson v. State, Fla.App. 1973, 284 So.2d 24, such submission, even if erroneous, favored appellant. This is so because the state was thereby given the additional task of satisfying the jury as to the materiality issue when the trial judge had determined the testimony to be legally material to the grand jury inquiry by twice denying appellant's motions for judgment of acquittal, which motions were based in part upon the contention that materiality had not been proven.
All of which brings us to the main question involved here: Was the evidence adduced at trial sufficient to show the nature of the inquiry at the time appellant testified before the grand jury? To bring the issue into sharper focus, it seems to us there can be no question that appellant's testimony regarding the date of the employment contract with his wife was quite material to the grand jury inquiry if the subject matter of that inquiry was the manner in which appellant conducted the operation and management of his public office. When testimony is capable of misleading, influencing, or even deterring a grand jury in the conduct of its investigation, it is material. State v. Deets, Iowa 1972, 195 N.W.2d 118. Thus, if the contract was executed in 1969 for a period of five years, as appellant testified in the grand jury proceedings, the employment of his wife in the county comptroller's office would not violate § 116.111, F.S. (the anti-nepotism statute), as such employment would have predated the effective date of the statute (January 1, 1970). While the state could certainly have presented a fuller and more complete explanation of the nature of the grand jury's investigation, the total record convinces us the petit jury knew exactly what the grand jury was investigating and was adequately apprized of the subject matter of the investigation so as to determine that appellant's testimony was material thereto.
In its opening statement the state advised the jury that it would prove that at the time in question the Broward County Grand Jury was in the midst of an investigation into alleged improprieties of the appellant's office, including certain employment and payroll practices in that office. The state suggested it would prove appellant's testimony before the grand jury to the effect that he signed an employment contract with his wife in 1969 was false and was given for the purpose of avoiding prosecution under the anti-nepotism law, which became effective January 1, 1970. It further proposed to prove that the stationery on which the contract was prepared was not printed until after January 1, 1970, since it bore a picture of the new courthouse addition, which picture was not taken until December 1971.
Of course, what counsel says in his opening statement is not evidence and cannot be used in our determination of whether or not the proof was adequate to show the subject matter of the grand jury inquiry. But the opening statement of counsel is important to apprize the jury of the issues involved in the trial and of the matters which he expects to prove. It also facilitates the jury's understanding of the evidence as it unfolds. Moreover, the state did adduce evidence to support the opening statement.
The Forewoman of the Broward County Grand Jury testified she personally placed appellant under oath on September 25, *717 1973. In addition, she identified the contract between appellant and his wife dated February 4, 1969, as being the one which appellant identified in his testimony before the grand jury. She also stated that appellant's testimony concerned that particular contract which the grand jury became interested in "when we started with the testimony about things in the office, and when we got into this contract the date was important." She stated further that the date was important since appellant had said it was signed in 1969; but if it had been signed after 1970 it would have been in violation of the nepotism law. When the prosecutor asked her:
"How was that [the date of the contract] important to what the Grand Jury was investigating?"
the witness answered:
"Well, this was violation of the nepotism law, if it was signed after  I think the date was '70  I am not sure of the month, and by the hiring of his wife and with this contract of 1969 that would have been the grandfather clause, and that would have raised the nepotism law."
Mr. Jenne, the assistant state attorney in charge of the grand jury investigation, testified at trial that the grand jury was "looking into the Comptroller's office. Jack Wheeler was the incumbent responsible for his office." Jenne testified further that they were investigating appellant for nepotism, and appellant's statement to the grand jury precluded any indictment for violation of the nepotism statute because according to appellant's testimony the contract with his wife would predate the statute. Jenne also testified that initially the state attorney's office decided that a full investigation of appellant's office would best be presented to a grand jury. And so when the grand jury began its inquiry, the "areas" of inquiry concerning appellant's office were nepotism, financial records, unlawful overtime payments to certain employees, loan sharking, and other matters of impropriety.
Mr. Butterworth, another assistant state attorney involved in the grand jury probe, testified that three successive grand juries were investigating appellant's office; that they referred to it as the "Wheeler investigation"; that they subpoenaed large quantities of records from appellant's office; and that they looked into bank records, bonus monies, various trips and other matters involved in appellant's office. There came a time during this investigation, Butterworth stated, when several of the assistant state attorneys discovered that there was a discrepancy between the physical appearance of the courthouse picture on the stationery used for the February 4, 1969 contract in question and the actual physical appearance of the courthouse on that date. The stationery picture portrayed a ten story courthouse, whereas in 1969 the courthouse had only six stories.
It would unduly protract this opinion to further elaborate on the testimony which we find sufficient to prove the subject matter of the grand jury's investigation so as to demonstrate the materiality of appellant's testimony. Suffice it to say that in our judgment the transcript of the trial proceedings shows that the evidence was adequate to prove that issue.
Accordingly, the judgment and sentence appealed from is affirmed.
OWEN, C.J., and BROWN, CECIL H., Associate Judge, concur.