139 So.2d 513 (1962)
CITY OF MIAMI, a Municipal Corporation in the State of Florida; M.L. Reese, City Manager, Director of Public Safety, City of Miami; and R. Frazier Potts, Stuart Morrison, Richard F. Helken, Les Perkins and Nora Womble, As Members of the Civil Service Board, City of Miami, Appellants,
v.
Thomas JERVIS, Jr., Robert Bedford Lemmons and Jay William Humphrey, Appellees.
No. 61-279.
District Court of Appeal of Florida. Third District.
April 3, 1962.
*514 Edward J. Fitzpatrick, Acting City Atty., and Charles K. Allan, Asst. City Atty., for appellants.
Cowart & Dollar, Miami, for appellees.
Before HORTON, BARKDULL and HENDRY, JJ.
PER CURIAM.
This is an appeal to review the order of the lower court quashing the findings and recommendations of the Civil Service Board and judgment based thereon of the City Manager of the City of Miami, who is also the Director of Public Safety.
Appellees, all employed as policemen in the Department of Public Safety of the City of Miami, Florida, were suspended from their employment by the City Manager of the City of Miami, based upon findings and recommendations of the Civil Service Board, after a hearing before the said board, pursuant to the applicable provisions of the Charter of the City of Miami.
The hearing before the administrative tribunal was concerned with the charges that appellees were guilty of "conduct unbecoming an employee", and that they had refused to sign a waiver of immunity pursuant to an investigation before the Grand Jury of the same incident out of which arose the charges before the board. After the adverse findings and judgment, the appellees petitioned the lower court for a writ of certiorari on the ground that the proceedings before the administrative tribunal departed from the essential requirements of law.
*515 The lower court in its final order stated:
"This Court has reviewed the record of the hearing before the administrative tribunal. While recognizing that an administrative board is not required to adhere to the strict rules of evidence and procedure of a court of record, there is a certain standard of basic fairness which must be met if due process is to prevail.
"As petitioners were charged with `conduct unbecoming an employee' for their refusal to sign a waiver of immunity, under § 13, Rule 16 C.S. Rules and Regulations of the City of Miami, in an investigation by the Grand Jury of the same incident out of which arise these charges before the board, testimony was admitted that they had in fact appeared before the Grand Jury and refused to sign a waiver of immunity but offered voluntarily to testify after the hearing before the Civil Service Board. Their refusal was reputedly based upon a fear that signing such a waiver and testifying at that time might prejudice them in their hearing before the Civil Service Board. Upon refusal to sign the waiver, they were dismissed as witnesses by the Grand Jury. The Civil Service Board ultimately dismissed the charge against them on this ground, but only after extensive discussion of their failure to sign the waiver. This extensive discussion seems to have impressed at least one member of the board with the notion that petitioners had refused to testify at all. The significance of such impression will become apparent during the course of this opinion.
"There was introduced evidence of the refusal of all three petitioners to submit to a lie detector test, although as a matter of fact one of the officers did ultimately submit thereto. Testimony was introduced that in such test there was
"`Deception indicated by the emotional response of the subject to question 27, 28, 29, 30, 31, 32. It is therefore assumed that this subject is not telling the truth and is criminally involved in the offense listed.' [Emphasis added]
There was extensive discussion as to the admissibility of any reference to lie detector tests. The chair ruled against such a reference but was overruled by the other members of the board. Later the chair ruled against the admission of this particular test and was at first sustained by the board, but later was overruled and the results of the test were admitted.
"The complaining witness also testified that he submitted to a lie detector test but there was no testimony as to the results thereof, the implication being, in light of subsequent remarks in the record, that he had nothing to hide and was telling the truth.
"The two officers who had not already submitted to the polygraph tests were requested to do so `voluntarily' in order that the board might have the benefit of the results. One of the board members stated to Petitioner Lemmons:
"`It is a tough job finding out what the truth is. I just don't think I am smart enough to find out  Would you consider volunteering now to take, not one lie detector test, but three different tests?'
"When counsel for the petitioner advised against it, the attorney for the City of Miami stated:
"`This is a fact finding board * * * why don't a man take a lie detector test?'
"When petitioner still refused to take the test  as the entire board conceded he had a right to do  the same board member, who had formerly acknowledged his inability to arrive at the truth without a test stated:
"`You cannot escape the fact the machine exists and if you do not submit yourself to it you are creating somewhat of a presumption in our minds, you cannot argue us out of this presumption.'
*516 "Thereupon another member of the board took up the questioning with:
"`* * * then I would certainly want the world to know my side of it * * * Therefore, I can't understand why you have not made some sort of a statement to the Grand Jury.'
"At this time the charge concerning the refusal to sign a waiver before the Grand Jury had already been dismissed as not warranted by the evidence.
"In interrogating the other officer, Jervis, and attempting to persuade him to take the test, the same board member, first above referred to, stated:
"`I want to point out one other thing with regard to this lie detector. This is my personal statement. I don't know whether it reflects the sentiment of this Board, but I think whether you consent or do not consent to be tested by the lie detector, you are, in fact, being tested by it whether you take the test or don't. If you do take the test, the polygraph shows certain findings; if you don't take the test, one has to surmise there are good reasons why you don't and that doubt remains in our minds as to whether or not you have stated the full and exact reason.

* * * * * *
"`I think the officers have testified that they leave it up to us to make up our minds. Their reasons given here for not submitting to the test, that is up to each of you to decide individually.'
"One of the reasons given by the officers was that they did not trust the accuracy of the tests, from their experience as police officers (in this regard see the enlightening article `Scientific Theory and Scientific Evidence; An Analysis of Lie Detection' by Jerome H. Skolnick, 70 Yale Law Journal 694, April 1961), and mentioned a rumor current among members of the department of a case where it had proved to be in error. The City on rebuttal was permitted to introduce evidence to show, not that the petitioners did not hear the rumor or believe it, but that the rumor was untrue, again emphasizing in the minds of the board members the idea of guilt associated with the refusal to take the test. Further pages 655-661 of the record show that there was an attempt made to introduce the testimony of still another witness to show that the rumor was false in fact, a fact readily stipulated to by the counsel for the petitioners.
"It should be noted that the votes of guilty and for dismissal were by a 3-2 margin and that, of the three members voting against petitioners, two were those members who had commented upon the failure to take the lie detector test and of the failure to waive immunity before the Grand Jury.
"I should like to point out, in the light of the admission of the one board member that he was unable to discover the truth, that the burden of proof in sustaining these charges is upon the city (Hammond v. Curry [153 Fla. 245], 14 So.2d 390) and that there is a presumption of innocence in removal proceedings (State [ex rel. Hawkins] v. McCall [158 Fla. 655], 29 So.2d 739).
"It is further to be noted that although § 65(a) in conjunction with § 25 of the City of Miami Charter requires written charges to be filed within five days of suspension, petitioners were suspended on May 24th or 25th, and charges were not preferred until June 9th. It is true that in an effort to conform to the requirement of the charter, petitioners' payroll status was apparently changed from `suspended' to `leave without pay' until June 9th, the date written charges were handed to and accepted by petitioners. However, they apparently were never informed of the changed status and they had completely divested themselves of uniform, badge, ID card, gun, etc., on May 26th, at the latest, and had not worked since.
"Petitioners accepted the late-tendered charges when actually preferred, accepted *517 paychecks until that date and cashed them, and petitioned for appeal to the Civil Service Board on the propriety of suspension on those charges as provided by § 65(a) (rather than by mandamus for reinstatement for failure to prefer charges as required by the Charter). In view of petitioners' adoption of this course of conduct, this decision is not based upon the irregularity in preferring charges, but mention is here made of it as one of the many circumstances involved in the operation of the administrative process.
"From a careful study of Reynolds v. Brigham [144 Fla. 253], 197 So. 840, it is clear that there are now two possible investigation procedures. One is strictly administrative at which no legal representation need be accorded (and the only one available before court action at the time of the cited case) and under present 65(a) a subsequent investigation or trial of the issues before the Civil Service Board, which is denominated in the Charter as an appeal by the employee. The amendment to 65(a) removed the finality of the department head's determination and substituted quasi-judicial board action for the Court trial referred to in the cited case. The Civil Service Board repeatedly stated that it was only a fact finding body, but in view of its characterization in the Charter as an appellate tribunal, and its quasi-judicial function, in a situation such as this under 65(a), it may well be that the board misconceived its function to some extent.
"Taking the administrative process as a whole, I find that it is so pervaded by procedural irregularities, erroneous presumptions, and disregard of the basic rules as to burden of proof and presumption of innocence, that the essential requirements of law were not met. Petitioners have been deprived of what are property rights by a hearing and administrative procedure, which, although obviously conducted in absolute good faith, so basically disregarded the petitioners' rights as to be lacking in due process.
"It is too much to expect the Director of Public Safety or a court to sift and sort the good from the bad in a record so voluminous and replete with misconceptions as is this. The confusion of issues and disregard of basic principles of due process so infect the entire record that the judgments based thereon cannot stand. This Court does not presume to substitute its judgment for that of the able City Manager. It does not purport to pass upon the merits of the respective charges against these petitioners, but simply finds that the essential requirements of law were not met in the administrative procedures below. The Legislature of this state has seen fit to afford certain Civil Service benefits to the City of Miami and to certain of its employees and to have outlined the administrative procedures associated therewith. This is a government of laws, not men. It is the function of the courts to keep it so.
"Therefore, the essential requirements of the law not having been met, the recommendations and findings of the board and the judgment of the Director of Public Safety thereon are hereby quashed and the case is remanded to the Director of Public Safety for further proceedings in accordance with this opinion."
It is apparent from the record that the administrative proceedings did not meet with the minimum requirements guaranteed by law to those persons appearing before an administrative tribunal. DeGroot v. Sheffield, Fla. 1957, 95 So.2d 912. Therefore, we approve and adopt the findings of fact and conclusions of law contained in the order under review, and announce that no presumption is to be drawn adverse to a person or party because of his failure to submit to a lie detector test.
Affirmed.