## DE LURIA v. CITY OF NORTH MIAMI, FLORIDA
Case No. 80-338 AP
Eleventh Judicial Circuit, Dade County, Appellate Division
April 8, 1982

Lawrence H. Malman, for appellant.

James Grayson, for appellee.

Before DURANT, GOLDMAN, AND GODERICH, JJ.

PER CURIAM

This is an appeal from an administrative decision of the City Manager of the City of North Miami, Florida, upholding the Appellant's removal

from his position as a police officer with the City of North Miami, Florida, as well as from prior administrative actions taken against Appellant wherein the Appellant was suspended without pay for an indefinite period.

On March 22, 1979, Appellant, Robert L. De Luria, a five year veteran of the City of North Miami Police Force, was suspended with pay from his position as police officer by James Devaney, Chief of Police of the City of North Miami. On April 9, 1979, Chief Devaney hand delivered a notice to Appellant that he was removed from the service of the City, effective April 10, 1979, 9:00 A.M., for "Conduct unbecoming an employee," which is a violation of Rule XIII, Section C, paragraph 9, of the Civil Service Rules. On April 10, 1979, Chief Devaney mailed another notice to Appellant which stated that Appellant was suspended April 10, 1979, 9:00 A.M. for an indefinite period of time for violation of the same Rule. On April 10, 1979, Appellant, through counsel, requested a hearing pursuat to Rule XIII, Section D of the Civil Service Rules of the City of North Miami. Subsequently, on June 5, 1979, the City manager approved the suspension without pay.

The hearing was eventually conducted on October 16, 1979, at which time the Personnel Board recommended that the City Manager suspend the Appellant.

On August 25, 1980, Thomas O'Connell, Chief of Police of the City of North Miami, mailed a notice to Appellant which stated that he was removed from the service of the City of North Miami, effective August 20, 1980, 10:45 A.M., for "insubordination" in violation of Rule XIII, Section C, paragraph 4 of the Civil Service Rules. Appellant through counsel, requested a hearing and a detailed written statement of the reasons for his removal pursuant to Rule XIII, Section D, of the Civil Service Rules of the City of North Miami. On October 20, 1980, Chief O'Connell mailed a letter to Appellant specifying the reasons for his removal. The Appeal hearing was held on November 21, 1980, at which time the Personnel Board upheld removal of the Appellant. On December 1, 1980, Timothy Zeien, Personnel Director of the City of North Miami, advised Appellant by letter that the City Manager had affirmed Appellant's removal from the classified service of the City of North Miami. On December 18, 1980, Appellant, through counsel, filed his notice of Appeal.

The Appellant's initial "suspension" and later termination as a police officer with the City grew out of events which occurred on March 20, 1979. As a result of those events, Appellant was indicted by a Federal Grand Jury in early April of 1979 on counterfeiting charges. The indictment against Appellant was dismissed on May 28, 1980.

Appellant's suspension of April 10, 1979, was for violation of Rule XIII, Section C, paragraph 9 of the City Service Rules which states: "That the employee has been guilty of any conduct unbecoming an employee of the City, whether on or off duty." Section E of Rule XIII, of the Civil Service Rules provides as follows:

> "Any appointing authority and in his absence the officer authorized to act in his place, may for disciplinary purposes, suspend without pay, an employee in his department or division for one or more periods aggregating not more than ninety days in a calendar year on account of inefficiency, incompetence, misconduct, negligence, insubordination, disloyalty to his asscenting authority on the City, State, or Federal Governments, or other sufficient cause. The procedure and rights affecting such suspension shall be the same as that prescribed in the Rules relating to removal. All suspensions must be recorded in the employee service record."

Appellant took an Appeal to the Personnel Board of the City and a hearing was conducted on October 16, 1979. The evidence offered against Appellant at the hearing was hearsay testimony concerning the events leading to the indictment and the indictment itself.

On October 25, 1980, Chief Thomas O'Connell removed appellant from service of the City for violation of Rule XIII, Section c, paragraph 4 of the Civil Service Rules which provides:

> "That the employee has violated any lawful or official regulation or order, or failed to obey any lawful and reasonable direction given him by his supervisor when such violation or failure to obey amounts to insubordination or serious breach of discipline which may reasonably be expected to result in lower moral in the organization or to result in loss, inconvenience, or injury to the city of the public."

In a subsequent letter to the Appellant the Chief explained the reasons in more detail:

> "On October 20, 1980, a departmental internal affairs investigation was conducted in regards to your involvement in the counterfeiting incident. As you recall you were given the opportunity to take a polygraph examination. After you declined to submit to this examination, I then gave you a direct order. After you refused this order I then terminated you for insubordination, for violation of Rule XIII, Section C, paragraph 4 of the Civil Service Rules of the City of North Miami."

Thus, the Appellant was terminated for insubordination for refusing to take a polygraph test.

First, we consider the City of North Miami's contention that, considering the totality of the circumstances, the Police Chief had a right to require the Appellant to take a polygraph examination prior to his reinstatement. The City argues that, in balancing the interests involved in this case, the interest of the City and the Chief in protecting the integrity of the Department and gaining insight into the incident itself dictate that the taking of a polygraph examination was a reasonable and lawful order. (Rule XIII, Section C, paragraph 4, Civil Service Rules of the City of North Miami).

The Appellant argues that the termination for insubordination for failure to comply with an order to submit to a polygraph examination was a violation of his constitutional rights under Florida Law. The Appellant asserts that his Fifth Amendment rights against self-incrimination and his procedural due process rights were violated.

The availability of the Fifth Amendment rights again self incrimination "does not turn upon the type of proceeding in which its protection is involved, but upon the nature of the statement or admission and the exposure which it invites. The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory." *STATE EX. REL. VINING v. FLORIDA REAL ESTATE COMMISSION*, 281 SO 2d. 487, 491 (FLA. 1973) *The proscription against self-incrimination applies to any administrative proceeding of a penal character. *KOZEROWITZ v. FLA. REAL ESTATE COMMISSSION*, 289 SO 2d. 391 (FLA. 1974). In State ex rel. Vining, a real estate broker was charged with several violations of the Real Estate License Law. The real estate broker moved to quash the information alleging that the requirement of filing a sworn answer violated his right to remain silent guaranteed to him by the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Florida Constitution, F.S.A. The court, relying upon *Speaves v. Klein*, 385 U.S. 511 (1967), where the Supreme Court made the privilege against self-incrimination available to a lawyer in a disbarment proceeding, extended the privilege to "other types of administrative proceedings which may result in deprivation of livelihood."

The threatened loss of professional standing as a police officer is at least as serious as loss of professional standing through revocation of ones real estate license or disbarment to an attorney. The threatened loss of professional standing as a police officer is as coercive and compelling as forcing the accused to testify against himself in legal proceeding.

The facts in the instant case are similar to those in *City of Miami v. Jervis*, 139 So. 2d 513 (Fla. 3rd DCA 1962). Several police officers of the City of Miami were discharged for conduct unbecoming an employee because they refused to sign a waiver of immunity pursuant to a Grand Jury investigation and refused to submit to a polygraph examination. The dismissals were reversed because the proceedings did not meet with the minimum requirements of law. The *Jervis* court noted that the statement of one member of the Civil Service Board:

> "You cannot escape the fact the machine exists and if you do not submit yourself to it you are creating somewhat of a presumption in our minds, you cannot argue us out of his presumption."Id. at 515.

Comment by the Chairman of the Personnel Board of the City of North Miami should be compared with the comments of the above Board Member.

> "If the use of a polygraph would, in fact, support the inconvenience of your client as you maintain he is, pure and innocent, why answer me, why would you tell him not to submit to it."

During the same proceedings the Chairman stated:

> "And I believe it they honestly feel and know that they're innocent, they would have no objection to any sort of test that would be fairly given."

The statements by the chairman and the termination of the Appellant are contrary to the position adopted by the *Jervis Court* that "there is a presumption of innocence in removal proceedings.*

In *Jervis* the Third District Court of Appeal questioned the accuracy of polygraph examination and the effect a mistake could have on an innocent employee. In addition, the Florida Supreme Court has refused to allow the results of polygraph examinations to be admissible in evidence in criminal cases. *Sullivan v. State*, 303 So. 2d. 632 (Fla. 1974); *Kaminski v. State*, 63 So. 2d 339 (Fla. 1953).

These cases demonstrate the unwillingness of Florida Courts to apply a lower constitutional standard upon police officers. We must certainly concur with the existing judicial precedent.

Appellant also asserts that his suspension was invalid because it was based on entirely on hearsay evidence. "On renewing decisions of lower tribunals the Circuit's Court's scope of review is limited to a determination of whether procedural due process has been accorded, whether the essential requirements of law have been observed, and whether the decision is

supported by substantial competent evidence." *Campbell v. Vetter*, 392 So. 2d. 6 (Fla. 4th DCA 1980.

While adjudicatory proceedings before administrative boards are not required to adhere to strict rules of evidence, *Jones v. City of Hialeah*, 294 So. 2d 686 (Fla. 3rd DCA 1974), the hearsay rule should not be totally discarded, "particularly in cases where individuals are threatened with serious deprivation, such as loss of a job." Id. at 688.

In Vetter, a City of Hollywood police officer was discharged from his employment. The discharge was affirmed by the Civil Service Board of the City of Hollywood and upon review by the Circuit Court, the discharges were reversed. The Circuit Court ordered that the police officer be reinstated with full back pay. The Fourth District Court of Appeals affirmed the ruling of the Circuit Court and held that "the evidence against Vetter was so infected with the introduction of hearsay that the circuit court was entirely justified in concluding that, without the hearsay evidence, the charges against Vetter were unsubstantiated by other competent evidence." *Campbell v. Vetter*, 392 So. 2d 618 (Fla. 4th DCA 1980). On the case at bar, only evidence offered against Appellant was hearsay testimony concerning the events leading to the indictment and the indictment itself which is also hearsay. Clearly, some hearsay evidence could be admitted but the record of suspension fails to disclose *any* competent evidence to support the Board's decision. Id. at 8 (Rule XIII, Section C, paragraph 7 of the City of North Miami provides that an employee may be suspended or removed for a conviction of a criminal offense involving moral turpitude, but there is no provision in the Rules for disciplinary action to be taken solely on the basis of an indictment).

Civil Service Rules of North Miami clearly provide that the City Manager's duty is to make a final disposition on all appeals to the Personnel Board after the Board conducts a hearing and reports its findings and recommendations to the City Manager. Rule XIII, Section D, paragraph 2, Civil Service Rules of the City of North Miami. The City Manager's approval of Appellant's suspension occurred on June 5, 1979, while the Personnel Board Hearing was conducted over four months later, on October 16, 1979, clearly in violation of the Rule. The record reflects no final determination by the City Manager on the suspension of Appellant. The action is, therefore invalid because an administrative body may not disregard its own rules *City of Hialeah v. Stola*, 330 So. 2d 825 (Fla. 3rd DCA 1976).

The Appellant was suspended for an indefinite period which is in violation of the City's rules. Rule XIII, Section D (2) (6) of the City's

rules. Rule XIII, Section D (2) (6) of the Civil Service Rules provides that the Board may at its discretion, "Recommend confirmation of or the increase or decrease of any suspension period imposed by an appointing authority."

The Appellant's original suspension was for an indefinite period of time and, therefore, not authorized by the City's rules. The Personnel Board did not recommend that the indefinite period be increased or decreased but, rather, voted to sustain Chief Devaney's action. The suspension was never made a final disposition pursuant to Rule XIII, Section D, paragraph (2) Civil Service Rules of the City of North Miami.

One final argument by the Appellant is that the City Attorney played inconsistent parts as legal advisor to the Personnel Board and prosecutor. The Appellee cited two cases in which this conflict of interests was not deemed sufficient to overturn a prior ruling. However, in one case *Metropolitan Dade County v. Florida Processing Company*, 218 So. 2d 495 (Fla. 3rd DCA 1969), the Court stated that they already affirmed the judgment on "the foregoing grounds, without deciding whether the Board denied due process of law by allowing an Assistant County Attorney to act as both its prosecuting officer and its legal division during the hearings. In the other case, *Ford v. Dade County School Board*, 246 So. 2d. 119 (1st DCA 1970) the prosecuting officer did not proffer any legal advice during the hearing nor was he present at a separate meeting at which final judgment was rendered. In the case at bar, the City Manager served as attorney professed legal advice, and was present when the Board made its final determination. This conflict of interest is not in accord with traditional motions of justice and fairness which must be met if due process is to prevail. *City of Miami v. Jervis*, 139 So. 2d. 513 (Fla. 3rd DCA 1962).

The Appellant was suspended and later terminated in violation of due process of law. The evidence presented at the suspension hearing was entirely hearsay. The action was in retaliation for the Appellant's exercise of his Constitutional rights. The indefinite suspension violated the City's own Civil Service Rules and the City Attorney played inconsistent parts as legal advisor to the Personnel Board and prosecutor. Accordingly, we reverse the decision of the City Manager and reinstate the Appellant with back pay.